[No. A043696. First Dist., Div. One. Dec. 27, 1990.]

BALMORAL HOTEL TENANTS ASSOCIATION et al., Plaintiffs and Respondents, v.
JAMES LEE et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

COUNSEL

Cyril & Crowley, David W. Gordon, Bennett, Samuelsen, Reynolds & Allard and Bryant M. Bennett for Defendants and Appellants.

Stephen Bartula for Plaintiffs and Respondents.

OPINION

**NEWSOM, J.**—The judgment on appeal arises from two actions brought by tenants in a residential hotel against a landlord who engaged in a disrup-

tive program of renovation. On March 17, 1986, 13 tenants filed a complaint against James Lee in the Superior Court of the City and County of San Francisco. The Balmoral Hotel Tenants Association and a second group of tenants filed a second complaint on September 23, 1986, against James Lee, Mark Shem, Ben Lee (hereafter appellants) and a fourth defendant who was later dismissed. The two actions were later consolidated. As amended, the complaints alleged several causes of action including wrongful eviction under section 37.9 of the San Francisco Administrative Code, interruption of utility service in violation of Civil Code section 789.3, breach of the covenant of quiet enjoyment, and both intentional and negligent infliction of emotional distress.

The consolidated cases went to trial on May 9, 1988. After 20 days of testimony, the jury was instructed on a wide range of theories of liability presented by the pleadings and the evidence, including violation of section 37.9 of the San Francisco Administrative Code. The jury returned a general verdict awarding damages to 23 plaintiffs in the total sum of $1,481,690. In answers to special interrogatories, the jury also found repeated violations of Civil Code section 789.3, subjecting appellants to additional statutory penalties, and stated that its general verdict rested in part on findings of liability for breach of the covenant of quiet enjoyment, breach of the implied warranty of habitability, negligent infliction of severe emotional distress, and intentional infliction of emotional distress.

In a judgment filed on June 21, 1988, the trial court trebled the damages in the general verdict under San Francisco Administrative Code section 37.9, subdivision (f), and awarded the plaintiffs statutory damages under Civil Code section 789.3. The judgment was later amended to include a further award of $261,000 in attorney's fees, bringing the total amount of the judgment to $4,842,470.

After the trial court denied their motion for new trial and for judgment notwithstanding the verdict, appellants filed a timely notice of appeal. They subsequently reached a settlement with all except one of the prevailing plaintiffs, Stephen Bartula (hereafter Bartula). Bartula received a judgment of $136,000, consisting of actual damages of $43,250, trebled to the sum of $129,750, plus statutory damages of $6,250 under Civil Code section 789.3.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

■   Other assignments of error, which attack the trebling of the damage award, present a threshold question of statutory interpretation. As we have

---

*See footnote, *ante,* page 686.

noted, appellants recovered damages for mental anguish on theories of tort liability as well as violation of the rent control ordinance. The tort liability alone would support a single recovery of the damages for mental anguish, but the verdict may be trebled only if the rent control ordinance authorizes recovery of such damages.

San Francisco Administrative Code section 37.9, subdivision (f), authorizes a tenant to recover "actual damages" from a landlord for an eviction or attempted eviction in violation of the ordinance. The trial court construed the term to include damages for mental anguish. This interpretation is indeed consistent with accepted legal usage.

The phrase "actual damages" is ordinarily synonymous with compensatory damages which may include damages for mental suffering. Analyzing a jury instruction on damages, *Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 16 [130 Cal.Rptr. 416], states, "emotional distress is a form of actual damage and must be proved as any other actual damage." In *Weaver* v. *Bank of America* (1963) 59 Cal.2d 428 [30 Cal.Rptr. 4, 380 P.2d 644], the court considered whether the term "actual damages" in a statute dealing with the wrongful dishonor of checks permitted recovery of damages for injury to reputation. Upholding the plaintiff's right to recovery for such injury, the court quoted the following definition of the term: " ' "Actual damages" is a term synomymous with compensatory damages, and covers all loss recoverable as a matter of right . . . .' " (*Id.* at p. 437.)

Relying on this legal usage of the term "actual damages," another division of this court has recently upheld the trebling of an award for mental suffering under section 37.9 of the San Francisco Administrative Code. (*Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586, 1600-1601 [265 Cal.Rptr. 719].) The award was challenged on a technical ground of insufficient pleading: the plaintiff did not list damages for mental suffering among the "actual and special" damages alleged in its complaint. The court approved a broad definition of "actual damages" and held that the term embraced both general and special damages. Although it did not specifically address the question whether the statute authorizes recovery of damages for mental suffering, the decision impliedly sanctioned such recovery by affirming the judgment trebling the jury's award for these damages.[1]

---

[1] In pertinent part, the decision states: "He [appellant] asserts that because respondent did not include damages for mental anguish among the 'actual and special damages' listed in paragraph 19 of his complaint the $20,000 awarded for pain and suffering ought to have been excluded from the sum trebled under section 37.9(f) of the Rent Ordinance, because that section provides for the trebling of 'actual damages.' This argument is meritless. [¶] First, 'actual damages consist of both general and special damages.' (Black's Law Dict. (5th ed. 1979).)[9] Thus, under the express language of the Rent Ordinance both general and special damages may be trebled." In footnote 9 the court quoted again from Black's Law Dictionary: "Actual

Countering these considerations, appellants offer persuasive reasons to construe the phrase "actual damages" narrowly to refer only to "damages actually incurred in moving expenses, payment of additional rent at other premises, damages to possessions and the like and not to general damages such as alleged emotional distress, . . ." This construction is permissible under the lay usage of the term "actual." The Oxford English Dictionary (2d ed.) defines "actual" as "[e]xisting in act or fact; really acted or acting; carried out; real;—opposed to potential, possible, virtual, theoretical, ideal." In this sense, "actual damages" might denote damages that are capable of exact measurement and proof; such damages would presumably be limited to economic losses. The context of San Francisco Administrative Code section 37.9 suggests that the term may have been used in this restrictive sense rather than as a legal term of art.

We note first that the adjective "actual" in the phrase "actual damages" is superfluous unless it has some restrictive meaning; the modifier is not needed to distinguish the damages recoverable under San Francisco Administrative Code section 37.9, subdivision (f) from some other category of damages such as punitive, nominal, liquidated, or statutory damages. Secondly, as used in three other parts of the rent control ordinance, the adjective "actual" does not refer to any legal concept but appears intended merely to attach a more restrictive meaning to the modified noun. Section 37.4, subdivision (h) provides that a member of the Residential Rent Stabilization and Arbitration Board "may receive reimbursement for actual expenses incurred in the course and scope of the member's duties." Section 37.9, subdivision (a)(11) provides that a landlord who temporarily removes a unit from housing used to carry out improvements "shall pay the tenant actual costs up to $1,000 for moving and relocation expenses . . . ." Section 37.9A, subdivision (e)(1) dealing with tenant rights in certain displacements provides that the "owner shall be liable to any tenant or lessee who was displaced from the property for actual damages which were the proximate result of that displacement, . . ."

An interpretation of "actual damages" as referring narrowly to out-of-pocket expenses is most consistent with the legislative purpose underlying the treble damage provision of the section. As explained in *Kelly* v. *Yee* (1989) 213 Cal.App.3d 336 [261 Cal.Rptr. 568], "lawsuits over wrongful evictions are likely to involve small amounts of money that may not justify the costs of litigation—expecially in the case of suits brought by the very type of tenant the ordinance is especially intended to protect: 'senior cit-

damages are further defined as '[r]eal, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to "nominal" damages, and on the other to "exemplary" or "punitive" damages.' (Black's Law Dict., *supra*, at p. 352.)" (*Beeman* v. *Burling, supra*, 216 Cal.App.3d at pp. 1600-1601.)

izens, persons on fixed incomes and low and moderate income households.' (San Francisco Admin. Code, § 37.1, subd. (b)(2).) If civil remedies in aid of these tenants are to be meaningful, they must provide sufficient financial incentive to justify bringing suit. The award of treble damages very clearly serves such a purpose." (*Id.* at p. 341.) The plaintiffs in *Kelly* in fact recovered damages of only $1,788 and $3,164. If these damages were not trebled, they might not have had the economic incentive to incur the expense of protracted litigation.

This legislative purpose has a much clearer application to damages based on a tenant's economic losses than to those based on mental suffering. As the present case illustrates, damages for mental anguish may well provide sufficient economic incentive to bring suit without any trebling. The assessment of damages for mental suffering, of course, involves considerable variability, but only verdicts at the lower end of the spectrum are likely to be so modest as to call for trebling in order to compensate the plaintiff for the expense of bringing suit.

In light of the ambiguity of the phrase, we think that the decisive considerations in construing the term "actual damages" in section 37.9 relate to constitutional issues. It is well established " 'that a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity.' " (*Young* v. *Haines* (1986) 41 Cal.3d 883, 898 [226 Cal.Rptr. 547, 718 P.2d 909]; *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669]; *Charles S.* v. *Board of Education* (1971) 20 Cal.App.3d 83, 94 [97 Cal.Rptr. 422].) According to Sutherland Statutory Interpretation (4th ed. 1984) § 45.11, page 46, the rule is based on the principle that the courts should impute to the Legislature "an honest purpose to keep within constitutional limits." (Fn. deleted.)

Although treble damage awards are not generally vulnerable to constitutional attack, the trial court's interpretation of San Francisco Administrative Code section 37.9 departs from the general pattern of treble damage statutes. Very few treble damage statutes offer the possibility of recovering treble damages for mental anguish.[2] Moreover, the mandatory trebling of damages, as section 37.9 requires under our decision in *Kelly* v. *Yee, supra,*

---

[2]The recovery of damages for mental or emotional injury is either inherently unlikely in view of the nature of the subject matter (e.g., Civ. Code, § 1812.123 [contracts for discount buying services]; Code Civ. Proc., § 733 [trespass on trees or timber]; Lab. Code, § 1697.1 [misrepresentation as to necessity of fee for transportation to farm worksite]) or is expressly precluded by the definition of recoverable damages. (E.g., Civ. Code, §§ 1716 and 1710.1; Gov. Code, § 6109; Bus. & Prof. Code, §§ 14438 and 18451.)

213 Cal.App.3d 336, is unusual where the statute involves the likelihood of a substantial recovery. Such automatic tripling is typically found where the subject matter of the treble damage statute concerns very small claims. (E.g., Ed. Code, §§ 19333 and 19334 [three times value of library book].) Many statutes leaving the trebling of damages to the discretion of the court (Civ. Code, §§ 54.3 and 3345; Code Civ. Proc., §§ 732, 735 and 749; Bus. & Prof. Code, § 14340), involve conduct that is inherently antisocial (Lab. Code, § 1054 [misrepresentation of former employee's employment record]), exclude "bona fide errors" or unintentional conduct (Bus. & Prof. Code, § 10246; Lab. Code, § 432.7), or permit an award to be trebled only on a finding of malicious or willful conduct. (Civ. Code, §§ 536 and 1694.9; Code Civ. Proc., § 1174; Lab. Code, § 206; Pub. Util. Code, § 7951; Gov. Code, § 27203.)

If we were to approve the trial court's construction of section 37.9 as providing for the mandatory trebling of damages for mental suffering, the statute would give rise to serious issues of substantive due process under *Hale* v. *Morgan* (1978) 22 Cal.3d 388 [149 Cal.Rptr. 375, 584 P.2d 512] (hereafter *Hale*). The *Hale* decision concerned application of Civil Code section 789.3 (hereafter section 789.3), which then assessed "a penalty of $100 per day against a landlord who wilfully deprives his tenant of utility services for the purpose of evicting [the tenant]." The defendant, a cable television installer, owned a small mobilehome park which rented spaces to "four or five mobile homes . . . ." (*Id.* at p. 405.) Plaintiff moved a mobilehome into the park without defendant's consent and then, after negotiating a small monthly rental, failed to pay rent for several months. When the defendant retaliated by cutting off his water and electrical lines, plaintiff filed an action for statutory penalties under section 789.3. The trial court found that defendant had wilfully cut off utility services for 173 days and imposed penalties in the amount of $17,300.

The California Supreme Court held that, as applied to the defendant, section 789.3 resulted in "the assessment of arbitrary, excessive and unreasonable penalties" exceeding the constitutional limits imposed by due process. (22 Cal.3d at p. 397.) The court considered that section 789.3 merited close constitutional scrutiny to the extent that it permitted no discretion in fixing a potentially large penalty. The penalty encompassed "a broad range of culpable activity and conduct on the part of the landlord, and a widely divergent injury resulting in damage to the tenant." (*Id.* at p. 399.) In the court's view, "a statute which applies such a mandatory, fixed, substantial and cumulative punitive sanction against persons of such disparate culpability is manifestly suspect." (*Id.* at p. 400.)

The *Hale* court observed at page 401 that the potentially "harsh impact, approaching confiscation" of section 789.3 was "wholly inconsistent with

the statutory norm." (22 Cal.3d at p. 400.) Civil penalties for "other forms of civil misconduct are usually made discretionary in amount." (*Id.* at p. 401.) There was no parallel for such a harsh sanction "for other more serious transgressions by the landlord against the tenant." (*Id.* at p. 400.) For example, the penalty for a landlord's forcible entry into a leased premise was "limited to a *discretionary* award *not to exceed* three times actual damages." (*Ibid.*)

In view of these considerations, the Supreme Court held that "section 789.3 may, under circumstances such as those herein presented, produce constitutionally excessive penalties." The court could not "conclude, however, that all applications of section 789.3's penalty formula would be unconstitutional." (22 Cal.3d at p. 404.) The statutory penalty might be modest in amount, or, again, a large penalty might be "proportioned to the landlord's misconduct and necessary to achieve the penalty's deterrent purposes." (*Ibid.*) Since the statute might have both constitutional and unconstitutional applications, trial courts should "evaluate the propriety of the sanction on a case-by-case basis." (*Ibid.*)

In *Kinney* v. *Vaccari* (1980) 27 Cal.3d 348 [165 Cal.Rptr. 787, 612 P.2d 877], the Supreme Court reviewed a civil penalty of $36,000 imposed on a landlord who had terminated utility service to tenants under peculiarly reprehensible circumstances. Applying the case-by-case approach of *Hale*, the court upheld the judgment but refused to increase the penalty as the tenants urged. The award was computed on the basis of $100 for each day that a rental unit was deprived of utility service. In a cross-appeal, the tenants argued that the penalty should have been computed by multiplying the days of violation by the number of tenants. The court held that such an interpretation would indeed violate the *Hale* decision, at least with respect to one rental unit. "[I]n the case at bar one of defendants' units was occupied by a family of six; under plaintiffs' construction of section 789.3, defendants would have been liable to this family for a mandatory penalty of $600 per day, or $4,200 per week. Even where the landlord's conduct is as reprehensive as that of the defendants here, such a large penal sanction would be unreasonably severe." (*Kinney* v. *Vaccari*, *supra*, 27 Cal.3d at p. 358.)

Although the ordinance under review here merely permits the trebling of damages—a limitation that the *Hale* court considered a saving feature of similar statutes—it nonetheless presents some of the constitutional defects elucidated in the *Hale* and *Kinney* decisions. We will consider (1) the potential for arbitrariness inherent in trebling a large award of damages based on mental suffering, (2) the disproportion between the size of the

judgment and the sort of recovery needed to serve the legitimate legislative purpose of the ordinance, and (3) the harsh impact of the judgment.

A principal vice of the statute invalidated in *Hale* lay in the potential of imposing arbitary sanctions by multiplying penalties by a nondiscretionary mathematical factor, i.e., the days of violation. The trebling of damages also involves application of a mathematical multiplier, but such a small multiplier will ordinarily produce easily calculable results, obviously contemplated by the Legislature, that lie well within the side of constitutionality. The problem here lies only in the trebling of damages for mental suffering. The multiplication of such damages may serve to magnify—by a factor of three—the uncertainties already present in the determination of the damages.[3]

The appropriate compensation for mental anguish cannot be determined by any objective standard capable of consistent and predictable application. "In a very real sense, the jury is asked to evaluate in terms of money a detriment for which monetary compensation cannot be ascertained with any demonstrable accuracy. As one writer on the subject has said, 'Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement, and consequently the judge can, in his instructions, give the jury no standard to go by; he can only tell them to allow such amount as in their discretion they may consider reasonable . . . .'" (*Beagle* v. *Vasold* (1966) 65 Cal.2d 166, 172 [115 Cal.Rptr. 765, 525 P.2d 669]; *Rodriguez* v. *Bethelehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669]; *Botta* v. *Brunner* (1958) 26 N.J. 82 [138 A.2d 713, 718-720, 60 A.L.R.2d 1331].)

The variability inherent in determining the proper amount of an award for mental anguish is not a valid argument for refusing to award the damages. "[T]he detriment, nevertheless, is a genuine one that requires compensation . . . ." (*Capelouto* v. *Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 893 [103 Cal.Rptr. 856, 500 P.2d 880].) But when the award is trebled, a defendant's potential liability will vary more widely—three times more widely—according to an individual jury's sense of a proper monetary equivalent for mental suffering. The problem of such unpredictable liability is the same as that which the Supreme Court observed in connection with the

---

[3] The due process problem bears some analogy to *McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 379 [261 Cal.Rptr. 318, 777 P.2d 91], where the Supreme Court held that the trebling of damages served to magnify the possibilities of administrative arbitrariness beyond constitutionally acceptable limits: "Most significantly, however, we believe that the power to award treble damages in the present context poses a risk of producing arbitrary, disproportionate results that magnify, beyond acceptable risks, the possibility of arbitrariness inherent in any scheme of administrative adjudication." (Fn. deleted.)

trebling of antitrust judgments; " '[t]he common law's usual discomfort with imposing unforeseen liability is greatly exacerbated when compensatory damages are automatically trebled.' " (*McHugh* v. *Santa Monica Rent Control Bd.*, *supra*, 49 Cal.3d 348, 379, fn. 48.)

More fundamentally, the trebling of damages for mental suffering must be evaluated in light of the legislative purpose of San Francisco Administrative Code section 37.9. The *Hale* court's examination of comparable statutes reflects its effort to evaluate the relationship of the statutory penalties to a proper legislative goal. Treble damage statutes fall into two categories. The trebling of damages often serves to deter antisocial conduct; in other cases, involving claims that are ordinarily small in amount, the trebling is intended simply to provide sufficient economic incentive for aggrieved persons to bring suit. (E.g., Civ. Code, §§ 1716, 1710.1, and 1739.4; Bus. & Prof. Code, §§ 10146 and 18451; Lab. Code, § 1697.1.)

As we have noted, the legislative purpose of San Francisco Administrative Code section 37.9 falls into the latter category.[4] The question is, then, whether the trebling of damages for mental anguish serves an end that is "reasonably related" to the "legitimate governmental purpose" of providing aggrieved tenants sufficient economic incentive to contest violations of the rent control ordinance. (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 359 [55 Cal.Rptr. 23, 420 P.2d 735].) The present case provides the answer. It is obvious that the trebling of damages for mental anguish may sometimes produce awards that soar far beyond the measure needed to economically justify tenants in pursuing claims against their landlord. No doubt the chance of securing a windfall judgment might provide some incentive for representing low-income tenants, but such an aleatory incentive is offensive to the policy of equal justice.

The decision in *Kinney* v. *Vaccari*, *supra*, 27 Cal.3d 348, indicates that the size of statutory penalties may in itself violate substantive due process.

---

[4]Violations of the rent control ordinance do not always involve reprehensible conduct; they may have a technical character, or, as in *Kelly* v. *Yee*, *supra*, 213 Cal.App.3d 336, they may be committed by a landlord who relies in good faith on mistaken legal advice. Since section 37.9 does not condition the trebling of the damages on the presence of a malicious or willful intent, it cannot rationally be intended to deter wrongful conduct. The ordinance therefore cannot be justified on the grounds that have generally shielded punitive damage awards from constitutional attack. (See *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 819 [169 Cal.Rptr. 691, 620 P.2d 141]; *Bertero* v. *National General Corp.*, *supra*, 13 Cal.3d 43, 66, fn. 13; *Downey Savings & Loan Assn.* v. *Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072 [234 Cal Rptr. 835], cert. den. 486 U.S. 1036 [100 L.Ed.2d 610, 108 S.Ct. 2023]; *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 811-812 [174 Cal.Rptr. 348].) It is immaterial that appellants' conduct may in fact have been highly reprehensible. The trial court did not base the trebling of damages on a finding of wrongful conduct, and section 37.9 did not require such a finding.

Although the landlord there could hardly have been more culpable, the court indicated that a penalty computed by multiplying the number of tenants times the number of days of violation would be constitutionally excessive with respect to the family of six residing in a single unit. The *Hale* decision repeatedly stressed the size of the award, describing it as "substantial," "harsh," and "confiscatory." While the award was only for $17,000, it was "substantial" when compared with the recovery available under comparable actions involving "transgressions by the landlord against the tenant" or enforcement of statutory penalties; it was "harsh" in its economic impact on the defendant, a working man of modest means; and it was potentially "confiscatory" in relation to the value of the mobilehome park, a very small facility with only a "few rental spaces."

Again, the present case illustrates that the trebling of damages for mental anguish may produce awards in excess of these constitutional limitations. The judgment here was much larger than would be permitted by the remedy of punitive damages, which will seldom exceed 10 percent of the defendant's net worth. (*Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 391-396 [202 Cal.Rptr. 204].) Its financial impact on appellant James Lee is catastrophic. In a posttrial motion, he claimed to have a net worth of $7,075,798—a plausible figure in light of the evidence of his other real estate holdings. If this figure is even roughly accurate, the judgment of $4.8 million will exceed 50 percent of his net worth. The judgment, moreover, may be regarded as confiscatory in relation to the value of the hotel. James Lee bought the property, apparently at a bargain price, for $1.1 million; seven months later it was appraised at $2.1 million. Even at this valuation, the tenants' recovery greatly exceeds the value of the property where the violations occurred. Reprehensible as Mr. Lee's conduct may have been, such an award strikes us as unconscionable.

In summary, the mandatory trebling of damages for mental suffering may under unusual circumstances, such as those of the present case, "produce constitutionally excessive penalties." The present case represents, of course, an extreme result in applying an anomalous and awkwardly drafted ordinance. Under *Hale*, the issue of constitutionality must be decided on a case-by-case basis; an award may be invalidated only if it " 'clearly, positively, and unmistakably' " reveals constitutional defects. (22 Cal.3d at p. 404.) In other cases, a trebled award of damages for mental anguish may well be invulnerable to any serious constitutional attack. (E.g., *Marshall* v. *Brown* (1983) 141 Cal.App.3d 408, 417-418 [190 Cal.Rptr. 392].)[5]

---

[5] It is not clear to what extent the damage award in the *Marshall* decision was based on mental suffering, but, unlike the present case, the decision concerned a treble damage statute (Lab. Code, § 1054) reflecting a legislative purpose of deterring a form of inherently wrongful conduct—the misrepresentation by an employer of a former employee's employment rec-

Our analysis of the constitutional issues presented by the mandatory trebling of damages for mental suffering provides the decisive consideration in construing the phrase "actual damages" in San Francisco Administrative Code section 37.9. The phrase is unquestionably ambiguous; ordinary legal usage suggests that it includes damages for mental anguish, but the statutory context tends to favor a narrower meaning, limiting the phrase to economic losses. The former meaning will expose trebled awards to repeated constitutional attack and sometimes to constitutional invalidation; the latter avoids any issue of unconstitutionality. Thus, the question is whether we should impute to the legislative body a meaning that will infringe on constitutional limits, at least in some cases, or a meaning that stays safely on the side of constitutionality. We conclude that the rule favoring the resolution of ambiguity in favor of constitutionality applies here. Courts should not impute to the legislative body an intent to authorize awards which would repeatedly be subject to complex ad hoc adjudications of constitutionality.

We are reluctant to depart from a recent decision of another division of this court, but we note that, in dismissing a plainly meritless procedural objection, the court in *Beeman* v. *Burling, supra,* 216 Cal.App.3d 1586, did not have occasion to consider fully the issues of statutory interpretation that are squarely presented in this appeal. The issue of constitutionality—the critical consideration here—was not raised at all. To this extent, the *Beeman* decision rests on an incomplete analysis. We therefore hold that the phrase "actual damages" in San Francisco Administrative Code section 37.9 does not include damages for mental suffering.

. . . . . . . . . . . . . . . . . . . .*

The judgment is reversed, and the case remanded to the trial court for proceedings consistent with the view herein expressed. Costs to appellants.

Racanelli, P. J., and Stein, J., concurred.

Respondents' petition for review by the Supreme Court was denied March 28, 1991. Mosk, J., Broussard, J., and Kennard, J., were of the opinion that the petition should be granted.

---

ord—and the amount of the award subject to trebling was a quite conservative evaluation of the plaintiff's actual damages.

*See footnote, *ante,* page 686.