[No. B178918. Second Dist., Div. Eight. May 22, 2007.]

UN SIL McNAIRY et al., Plaintiffs and Appellants, v.
C.K. REALTY et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., III., IV., V., VI., VII. and VIII. of the Discussion.

## COUNSEL

Law Offices of George Terterian, George Terterian; Benedon & Serlin, Douglas G. Benedon and Gerald M. Serlin for Plaintiffs and Appellants.

Veatch Huang and Cyril Czajkowskyj for Defendants and Appellants.

## OPINION

**COOPER, P. J.**—This case involves a landlord-tenant dispute. In the published portion of the opinion we hold that damages for emotional distress are available under Civil Code former section 1942.4, subdivision (b)(1).[1] In the unpublished portion of the opinion we reject (1) the landlord's challenges to the sufficiency of the evidence, (2) the argument that a one-year statute of limitations should apply, and (3) the argument that the court erred in awarding punitive damages because the record lacks evidence of actual damages.

In the cross-appeal, which also is unpublished, we conclude that the trial court should have allowed all of the tenants to testify in the damages portion of trial. Even though not all of the tenants testified during the liability phase, the trial court found that "the entire complex had serious unresolved roach and water problems throughout." We affirm in part and reverse in part the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In two consolidated cases in 2001, plaintiffs sued C.K. Realty, Victoria Apartments, and Hee Cho.[2] Each plaintiff was a tenant of a unit at Victoria Apartments, which consisted of four buildings and 224 units. Hee Cho owned

---

[1] All undesignated statutory citations are to former provisions of the Civil Code.

[2] Originally there were 114 plaintiffs. Six plaintiffs were dismissed. The court found no standing with respect to two child plaintiffs because no guardian ad litem forms were filed as to them. That finding is not challenged on appeal.

the apartments and C.K. Realty managed the buildings.[3] While plaintiffs alleged numerous causes of action, the only successful ones were for breach of warranty of habitability and negligent and intentional violations of statutory duties. The unsuccessful causes of action included negligent and intentional infliction of emotional distress.

Prior to trial, tenants brought a motion to allow representative testimony on the issue of damages or, in the alternative, to bifurcate the issue of liability and damages. Tenants' counsel indicated that the trial estimate of 55 days could be shortened to 20 days by bifurcating the liability and damages portion of trial. Tenants' counsel explained that liability could be proven through the use of videos, photos, and experts, without requiring each plaintiff to testify. The parties agreed to have a bench trial on liability and subsequently agreed to a bench trial on damages.

*Liability Trial*

Twenty-four tenants testified in the liability phase of trial. Their testimony described an infestation of cockroaches in their units and in the common areas. Pictures showed glue traps filled with cockroaches. Tenants' expert testified that he saw 30 to 35 roaches in every unit he inspected (though he did not identify which units he inspected).

The tenants also complained of rust in the water. They testified that they did not drink the water and either purchased bottled water or water filters. They also testified that they were forced to bathe in and cook with the discolored water. One tenant showed the court discolored water from his unit. Tenants described the water variously as yellow, light brown, and dark brown.

Other tenants had more individual complaints such as pigeons and pigeon droppings; incomplete repairs to their units; inoperable appliances, including heaters and air conditioners; inoperable electrical outlets; floods; termites; paint; carpet; and a lack of either hot or cold water. Several tenants complained about mold in the bathrooms, which some explained was painted over but never removed. In one unit, the bathroom ceiling collapsed. The malfunctioning elevator was another common complaint, with several tenants testifying that they were stuck in the elevator.

Three health specialists from the Los Angeles County Health Department and two inspectors from the Los Angeles Department of Building and Safety

---

[3] The buildings were sold after the complaint was filed. During the punitive damages phase of trial, evidence was admitted that the net gain from the sale was $3,390,000. But the sale is not otherwise relevant to the issues in this case.

testified. They identified the following problems: cockroaches, leaky faucets, mold, inoperable ventilation, inoperable appliances, pigeons and pigeon droppings. The inspectors provided reports that documented the problems found in each unit that was inspected.

When the building was inspected in 1998, the plumbing had deteriorated. The piping eventually was replaced, but not within a reasonable time. Timothy Day visited the apartments 12 times from November 1999 through October 4, 2002, and each time noted housing code violations. Eighty-five percent of the plumbing was in disrepair. The deficiencies were not corrected by the compliance date. After repeat inspections, some of the violations were corrected, but new violations were identified at each inspection.

Hee Cho and his wife, Man Park, the manager, and a few tenants testified for the defense. According to them, the water was clear and they never saw more than one or two, if any, cockroaches. A defense expert testified that the water was potable, but did not test the water for rust. There was evidence that pest control provided services on a monthly basis and was adequately performed according to pest control expert, James McElroy.

*Liability Findings*

The court found Hee Cho and Victoria Apartments Partnership (appellants or landlord) breached the warranty of habitability and violated section 1942.4. C.K. Realty was found not liable. The court explained: "Given the extent of testimony and the various notices by County and City Inspectors, it is reasonable to infer that, at least, the entire complex has had serious unresolved roach and water problems throughout. Moreover, the court finds that these problems are enough to conclude that the apartment complex was 'untenantable' and subject to Civil Code section 1942.4 as pled by plaintiffs." The court found that "dirty, unsanitary water in an apartment house qualifies as 'untenantable.' "

The court also held that only the plaintiffs who testified in the liability portion of trial could present evidence of damages. "Non-testifying plaintiffs, be they spouses or otherwise, have presented no evidence of a basis of liability tort or contractual damages." The court exempted children for whom the testifying plaintiff was a guardian ad litem.

Finally, with respect to the culpability necessary for a punitive damage award, the court found that appellants acted with malice in that "their despicable conduct was carried on with a 'willful and conscious disregard for the rights or safety of others' (i.e., testifying plaintiffs)."

*Damages Trial*

Twenty-one tenants testified in the damages portion of trial. The tenants' testimony regarding damages was similar. They were worried, concerned, frustrated, and upset. The housing conditions were stressful. Some were ashamed to invite friends to their units. The tenants were inconvenienced by the water condition and described themselves as victims of conditions beyond their control. One tenant's wedding gift, a carpet, was ruined, when her unit flooded.

*Damages Findings*

Twenty plaintiffs were awarded $5,000 in actual damages, $1,000 in special damages, and $4,000 in punitive damages. Tenants who did not testify in both trials received no recovery. The court found insufficient evidence to find any damage to the children who were represented by their guardians ad litem.

Both sides appealed.[4]

## DISCUSSION

Appellants argue that the court erred in finding liability because not all of the requirements of section 1942.4 were satisfied. They also argue that an award for "actual damages" within the meaning of subdivision (a) of section 1942.4 cannot be premised solely on emotional distress. In addition, they argue that there was no substantial evidence of emotional distress. Finally, appellants contend the court should have applied a one-year statute of limitations instead of a three-year limitations period. Tenants, in their cross-appeal, argue that the court should have allowed all of the tenants to testify at the damages portion of trial.

I. *Substantial Evidence Supports the Trial Court's Liability Findings**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Award of Damages for Emotional Distress*

■ Section 1942.4 allows a tenant to recover "actual damages." (§ 1942.4, subd. (a).) ■ Here, the tenants testified to embarrassment, anger, fear,

---

[4] We previously denied tenants' motion to enforce a settlement agreement, finding that the settlement agreement "may not be enforced pursuant to the summary procedure for entry of judgment of Code of Civil Procedure § 664.6 because the agreement was neither stipulated to orally before the Court or in a written agreement signed by the parties."

*See footnote, *ante*, page 1500.

stress, helplessness, and frustration. Some tenants testified that they were required to throw out food because of roaches. A few tenants testified that they were too embarrassed to invite friends into their apartments. Most of the tenants described emotional distress, not physical damage. The parties dispute whether "actual damages" as used in section 1942.4 includes damages for emotional distress.

█ In statutory construction, our purpose is to determine the intent of the Legislature. (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].) " 'Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]' " (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 29 [34 Cal.Rptr.3d 520].)

█ Here, the plain language "actual damages" includes damages for emotional distress. As another court explained, "emotional distress is a form of actual damage . . . ." (*Merlo v. Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 16 [130 Cal.Rptr. 416].) "The phrase 'actual damages' is ordinarily synonymous with compensatory damages which may include damages for mental suffering." (*Balmoral Hotel Tenants Assn. v. Lee* (1990) 226 Cal.App.3d 686, 689 [276 Cal.Rptr. 640] (*Balmoral*).) Thus, the plain language of the statute includes damages for emotional distress.[6]

█ While appellants worry about "[w]indfall judgments based on emotional distress," section 1942.4 applies only if a building is found to be untenantable under section 1941.1. That means that the condition of the premises "are not fit for occupancy or rental." (Black's Law Dict. (6th ed. 1990) p. 1540, col. 1.) In addition, for liability to attach, the conditions must have existed for a substantial period of time. " 'Generally, the residential tenant who has suffered a breach of the warranty does not lose money. He instead cannot bathe as frequently as he would like or at all if there is inadequate hot water; he must worry about rodents harassing his children or spreading disease if the premises are infested; or he must avoid certain rooms or worry about catching a cold if there is inadequate weather protection or heat. Thus discomfort and annoyance are the common injuries caused by each breach and hence the true nature of the general damages the tenant is claiming.' " (*Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 915–916 [162 Cal.Rptr. 194].)

---

[6] We deny tenants' request to take judicial notice of the legislative history of section 1942.4 because the statutory language is not ambiguous and therefore we need not resort to the legislative history. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, *supra*, 133 Cal.App.4th at p. 29.)

The interpretation of other statutes in California cases and the interpretation of similar statutes in other jurisdictions support the conclusion that the term actual damages includes damages for emotional distress. For example, in *Konig v. Fair Employment & Housing Com.* (2002) 28 Cal.4th 743 [123 Cal.Rptr.2d 1, 50 P.3d 718], the California Supreme Court considered whether damages for emotional distress were available in a housing discrimination lawsuit where the statute allowed for the award of "actual damages." "Actual damages are 'compensatory damages [that] include nonquantifiable general damages for emotional distress and pecuniarily measurable special damages for out-of-pocket losses.' " (*Id.* at p. 748.) However, that definition applies to a statute that expressly includes emotional injuries within the definition of actual damages. (See Gov. Code, § 12970, subd. (a)(3).) Similarly, in Civil Code section 1798.48, the Legislature expressly stated that "actual damages" includes damages for mental suffering. (Civ. Code, § 1798.48, subd. (a).)

Even where the Legislature did not specify "actual damages" included damages for mental distress, courts have reached the same conclusion. For example, "actual damages" as used in Penal Code section 637.2, which concerns recording a confidential communication, include damages for emotional distress. (*Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 167 [1 Cal.Rptr.3d 536].) The victim of a surreptitious recording may suffer emotional distress upon the discovery of the recording. (*Ibid.*) "If the plaintiff has suffered injuries akin to those for emotional distress, 'i.e., anxiety, embarrassment, humiliation, shame, depression, feelings of powerlessness, anguish, etc.,' these are 'actual' damages . . . ." (*Friddle v. Epstein* (1993) 16 Cal.App.4th 1649, 1660 [21 Cal.Rptr.2d 85].) "Actual damages" as used in Civil Code section 52, subdivision (b), include general damages for emotional distress. (*Boemio v. Love's Restaurant* (S.D.Cal. 1997) 954 F.Supp. 204, 208.) In *Beeman v. Burling* (1990) 216 Cal.App.3d 1586 [265 Cal.Rptr. 719], the court upheld the tripling of damages for mental anguish in the context of a San Francisco rent control ordinance allowing for actual damages. (*Id.* at p. 1601.)

In contrast to *Beeman*, in *Balmoral, supra,* 226 Cal.App.3d 686, the court held that the phrase "actual damages" did not include damages such as emotional distress. The *Balmoral* court reasoned that: "It is obvious that the trebling of damages for mental anguish may sometimes produce awards that soar far beyond the measure needed to economically justify tenants in pursuing claims against their landlord. No doubt the chance of securing a windfall judgment might provide some incentive for representing low-income tenants, but such an aleatory incentive is offensive to the policy of equal justice." (*Id.* at p. 695.)

*Balmoral,* a case heavily relied on by appellants, does not compel a different result in interpreting section 1942.4 because appellants raise no constitutional argument similar to that presented in *Balmoral* and because section 1942.4 does not require the tripling of damages as did the statute at issue in *Balmoral.* The *Balmoral* court itself recognized that "actual damages" is "ordinarily synonymous with compensatory damages which may include damages for mental suffering." (*Balmoral, supra,* 226 Cal.App.3d at p. 689.) The rationale of the *Balmoral* court for departing from the ordinary meaning of the statute is not present in this case.

Cases from other jurisdictions also support the conclusion that "actual damages" include damages for mental distress. In *Thomas v. Goudreault* (1989) 163 Ariz. 159 [786 P.2d 1010], the court found that the meaning of "actual damages" as used in the Uniform Residential Landlord and Tenant Act depends on the "type of harm in the setting of a normal residential rental transaction that can reasonably be said to lie within the contemplation of the protections afforded by the Act." (*Thomas v. Goudreault, supra,* 786 P.2d at p. 1016.) "A tenant who is not provided with necessary services and maintenance of the leased premises as required under the Act suffers property damage because the value of his leasehold is decreased by the absence of adequate water, heat, cooling or proper maintenance of the building. However, the more immediate damage that he suffers is the annoyance and discomfort of living in inadequate housing." (*Id.,* 786 P.2d at p. 1018.)

The Oregon court interpreted a statute patterned on the same act slightly differently, finding that mental suffering falls within the ambit of "actual damages" but only if there was willful conduct on the part of the landlord. (*Brewer v. Erwin* (1979) 287 Or. 435 [600 P.2d 398].) Similar to the Arizona court, the Oregon court explained: "From the landlord's standpoint a rental is ordinarily a business transaction. Allowing for differences among tenants that may make one preferable to another, their rental payments are fungible. From the tenant's viewpoint, the transaction involves his or her home and personal life. Once the dwelling is occupied, its location, its decor, the view from its windows, the knowledge of one's neighbors, are by no means fungible." (*Id.,* 600 P.2d at p. 405.) The court held that for "actual damages" the "harm must be of a kind within the contemplation of the protective provision that was breached. [Fn. omitted.] It does not extend to the sort of annoyance, anger, or sense of frustration that frequently accompanies a dispute over a business transaction . . . ." (*Id.,* 600 P.2d at p. 407.)[7]

---

[7] Some courts have allowed damages for emotional distress in a breach of the warranty of habitability case. In *Teller v. McCoy* (1978) 162 W.Va. 367 [253 S.E.2d 114], the court explained that the damages from the reduction in use are not appropriate in a residential landlord tenant case because the "residential tenant who endures a breach of the warranty of habitability normally does not actually lose only money. The typical residential tenant rents a dwelling for

III.–VIII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed in part and reversed in part.

The judgment is affirmed with respect to those tenants who testified in both portions of trial and were awarded damages. These tenants include: Habibur Bhuyian, Jung Sook Sohn, Arlene Curry, Josephine Crawford, Tuk Sun Yi, Mi Lee, Soon Duk Leem, Youn Gu Chung, Johnny Salazar, Christopher Leung, Jung Sook Min, Kang Ho Lee, Anthony Paik, Citlaly Torrecillas, Teresa Djedro, Hyun Joo Yi, Gladys Yoou, In Kyung Rah, Myung Soon Pak, Mamadou Doucoure.

The judgment is affirmed with respect to Un Sil McNairy, Choon Mi Choi and Jiena Chang. These tenants were permitted to testify during the damage portion of trial but did not testify and therefore did not receive damages.

The judgment is affirmed with respect to Chris Jeon and Aysha Rahman, who were found to lack standing.

The judgment is reversed with respect to the remaining tenants. With the exception of Chris Jeon and Aysha Rahman, the 84 tenants who were prohibited from testifying during the damage portion of trial should be afforded the opportunity to testify regarding their damages, if any, as a result of the lack of potable water and the cockroach infestation.

---

shelter, not profit." (*Id.*, 253 S.E.2d at p. 128.) "When the warranty is breached, he loses, instead, such intangibles as the ability to take a bath or use hot water as frequently as he would like, he may be forced to worry about the health of his children endangered by rats, roaches, or other undesirable pests, or he may be denied the use of certain rooms in the apartment because there is odor, severe water leakage, or no heat." (*Ibid.*)

Applying similar reasoning, the Supreme Court of Vermont concluded that damages for annoyance should be awarded in a breach of the warranty of habitability case. (*Hilder v. St. Peter* (1984) 144 Vt. 150 [478 A.2d 202].) "Damages for annoyance and discomfort are reasonable in light of the fact that 'the residential tenant who has suffered a breach of the warranty . . . cannot bathe as frequently as he would like or at all if there is inadequate hot water; he must worry about rodents harassing his children or spreading disease if the premises are infested; or he must avoid certain rooms or worry about catching a cold if there is inadequate weather protection or heat. Thus, discomfort and annoyance are the common injuries caused by each breach and hence the true nature of the general damages the tenant is claiming.' " (*Id.*, 478 A.2d at p. 209.) We need not decide whether such damages are appropriate absent a statutory violation.

*See footnote, *ante*, page 1500.

The judgment is reversed with respect to Kyung Cha Bae, who testified in both the liability portion of trial and the damage portion of trial, but was not awarded damages. The trial court shall consider whether he is entitled to an award of damages.

The case is remanded to the trial court.

Tenants are entitled to costs for the appeal and cross-appeal.

Boland, J., and Flier, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied September 19, 2007, S153976.