[No. B204117. Second Dist., Div. Three. Feb. 11, 2009.]

CITIZENS OF HUMANITY, LLC, Plaintiff and Appellant, v. COSTCO WHOLESALE CORPORATION et al., Defendants and Respondents.

2

4

**COUNSEL**

Law Offices of Gary Freedman, Gary Freedman; Sussman Shank and John A. Schwimmer for Plaintiff and Appellant.

Greenberg Glusker Fields Claman & Machtinger, Norman H. Levine, Aaron J. Moss and Rachel Wilkes for Defendants and Respondents.

**OPINION**

**CROSKEY, J.**—A manufacturer of high-end apparel discovered that some of its current season products were being sold at a low-price warehouse store. The manufacturer asked the warehouse store to disclose its source for the products; the warehouse store refused. The manufacturer then sued the warehouse store for the sale of stolen property. The trial court ultimately denied the manufacturer discovery of the warehouse store's sources, and sustained the warehouse store's demurrer to the operative complaint. The manufacturer appeals. While we conclude the manufacturer is not entitled to the discovery it sought, and we further harbor substantial doubts as to the evidentiary support for the manufacturer's complaint, we conclude that the manufacturer has alleged a cause of action for the sale of stolen property, and therefore reverse.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff and appellant Citizens of Humanity, LLC, the successor in interest to D.A.D.S. Denim, Inc. (Citizens), is a manufacturer of "high end denim apparel products." According to the operative complaint, Citizens "only sells its current season apparel to retailers that [it] believes will provide a high level of customer service and who convey a prestigious image consistent with

[Citizens's] image," in order to "develop and maintain a reputation for high quality merchandise, fashion forward prestige, and outstanding customer service."

Defendant and respondent Costco Wholesale Corporation (Costco) owns and operates retail warehouse-style stores, that sell "among other things, household products, including apparel." At some point, Citizens learned that Costco was selling Citizens apparel. Citizens "purchased [its] apparel at Costco stores to try to investigate how Costco acquired this merchandise. That investigation revealed that the 'cut numbers' on some of the [Citizens] jeans sold by Costco, which can be traced back to the specific retailer for whom the goods were originally manufactured, demonstrated that the apparel was produced by [Citizens] for at least three different customers. Only three customers of [Citizens] had purchased more than one of the styles that were available for sale at Costco and no one had purchased all of the styles. [Citizens] therefore concluded that it was very unlikely that Costco could have obtained [Citizens] merchandise from so many different sources and that the merchandise may have been stolen from [Citizens] before it reached the intended purchasers."[1]

On August 30, 2006, counsel for Citizens wrote Costco "advising Costco that [Citizens] was concerned that Costco had obtained and was selling stolen merchandise and asking Costco to identify the sources of its [Citizens] apparel." Costco responded that it would not reveal its sources. On September 7, 2006, Citizens's counsel wrote Costco again, asking Costco "to provide proof, if you have it, that the [Citizens] goods offered for sale by Costco were not stolen property." Counsel explained that Citizens had purchased its jeans at Costco on two occasions. The first occasion involved jeans in three different style numbers, no two of which had been allocated to the same customer. The second occasion involved three additional cuts of jeans. The letter added, "of the numerous customers who were allocated any of the first three styles, only five were allocated <u>any</u> of the three styles purchased at Costco on the second occasion." Citizens found it "unbelievable that [Costco] would have acquired these jeans from so many different sources," and therefore brought suit against Costco.[2]

---

[1] This quote is taken from Citizens's motion to compel discovery. Citizens never explained why it leapt to the inference that the apparel had been stolen "from [Citizens] before it reached the intended purchasers," with no other evidence that the apparel had been stolen. While Citizens might not be aware of whether the jeans had been stolen *from Citizens's purchasers*, one would expect Citizens to have been aware of a theft *from itself*. Citizens now appears to concede that the jeans were not stolen from Citizens, but alleges that they were stolen somewhere further along the chain of distribution.

[2] Citizens does not explain how it is any more likely that Costco obtained jeans from multiple sources *illegitimately* than that it obtained them from multiple sources *legitimately*. Citizens's cut number evidence implies that the jeans *somehow* made their way from several of

On November 20, 2006, Citizens filed this action against Costco, alleging the sale of stolen property under Penal Code section 496.[3] Citizens alleged that its belief the jeans sold by Costco were stolen arose "in part because" Costco had refused to identify its source for the jeans when asked.

Costco filed a motion for judgment on the pleadings. Before the motion could be heard, Citizens filed a motion to compel discovery. Specifically, Citizens sought to compel Costco to identify the sources from which Costco had obtained Citizens jeans, and the terms of the transactions by which it had obtained them. Citizens argued that this information was necessary to support its claim that the jeans were stolen and that Costco had known the jeans were stolen. Costco opposed the discovery on the basis that its vendor information constituted a protectable trade secret. Costco produced evidence that its supplier list has economic value and that Costco makes substantial efforts to keep its suppliers' identities secret. Costco then argued that Citizens could not show that the discovery was necessary to the pursuit of its action, nor that there was no other way it could obtain the necessary information.

The motions were heard simultaneously. The trial court granted the motion for judgment on the pleadings with leave to amend.[4] As to the motion to compel, the trial court concluded that Costco had established that the identity of its suppliers was a protected trade secret, and that Citizens had failed to establish entitlement to that information.[5] The court nonetheless granted the motion to compel in part, allowing Citizens to discover the nonprivileged information regarding the terms of the transactions by which Costco had obtained the jeans.

On April 19, 2007, after the limited discovery was taken, Citizens filed the operative complaint in this action, its first amended complaint. The complaint alleged three causes of action: (1) sale of stolen property; (2) unfair competi-

---

Citizens's customers to Costco. Citizens apparently infers a single thief who stole jeans from multiple customers, a somewhat improbable scenario.

[3] Citizens also alleged a cause of action for unfair competition under Business and Professions Code section 17200. At this point, however, the unfair competition cause of action was based solely on the sale of stolen property.

[4] As Citizens subsequently amended its complaint, the basis for this ruling is not relevant to the instant appeal.

[5] The trial court relied, in part, on the theory of privacy, rather than trade secret. Costco had disclaimed any reliance on privacy, and, on appeal, does not assert that the trial court's ruling can be upheld on that basis. Nonetheless, it is clear that the trial court *also* relied on the doctrine of trade secret, specifically finding that Costco had provided "abundant evidence that the identities of Costco's vendors and suppliers are trade secrets."

tion; and (3) fraud and conspiracy to commit fraud. Citizens named two categories of Doe defendants: (1) the "Customer Does," who were Citizens's own customers who had purchased jeans from it; and (2) the "Source Does," who were Costco's sources, who provided the jeans to Costco, having purchased them from the "Customer Does," or other individuals in the chain of distribution.

Citizens again alleged its belief that the jeans sold by Costco had been stolen, although Citizens had "not yet been able to ascertain precisely when, from whom, and how" the apparel had been stolen. Citizens inferred a theft largely because of the information it had, and had not, obtained from Costco. Specifically, Citizens relied on Costco's refusal to identify both the Source Does and the Customer Does in its supply chain. Citizens also contended that Costco's documentation was unnecessarily redacted and appeared inaccurate.[6] The allegations that the jeans had been stolen supported Citizens's cause of action for the sale of stolen property, and its cause of action for unfair competition, based on "unlawful" practices.

In the alternative, Citizens alleged that the jeans had not been stolen. Instead, Citizens alleged that Costco had *conspired* with Source Does and Customer Does (either directly or indirectly) to obtain the merchandise by fraud. Specifically, Citizens alleged that the Customer Does obtained the jeans from Citizens "on the false pretense that the apparel was being purchased by the Customer Does for sale at retail stores owned or operated by the Customer Does. All participants in this conspiracy, including Costco, the Source Does, and the Customer Does, knew that [Citizens] would not have sold [Citizens] apparel to the Customer Does if the Customer Does had told [Citizens] that they intended to re-sell the apparel so that it would ultimately be sold at Costco." Citizens alleged that, pursuant to the conspiracy, "the Customer Does represented or implied to [Citizens] that they were purchasing current season [Citizens] apparel for sale in their own retail stores and failed to disclose to [Citizens] that they planned to re-sell the merchandise to the Source Does, either directly or indirectly through intermediaries, for eventual sale to Costco." Citizens alleged that this representation

---

[6] Citizens also alleged that, in deposition, a Costco representative had testified that the Citizens jeans sold by Costco "came from only two different customers," which did not match with Citizens's understanding, based on the cut numbers, that the jeans had to have come from at least three of its customers. Citizens alleged that this "is impossible unless the paperwork received by Costco was illegitimate and at least some of the garments were stolen." It is also possible, however, that one of Citizens's customers (who had one line of jeans) sold its jeans to a second customer (who had a second line of jeans), who then sold both lines of jeans to Costco's source.

was false, in that the Customer Does had been "purchasing the garments specifically with the intention to resell them to the Source Does, either directly or indirectly through intermediaries, and ultimately to Costco." The allegations of this conspiracy to commit fraud supported Citizens's cause of action for fraud, and its cause of action for unfair competition, based on "unfair" practices.

Costco demurred to the complaint. As to the cause of action based on the sale of stolen property, Costco argued that Citizens could not pursue its cause of action because (1) it could not allege that Citizens had owned the property when it was stolen; and (2) any injury to its goodwill suffered by Citizens was not the result of the purported theft. As to the cause of action for fraud, Costco argued that Citizens had failed to plead fraud with particularity, and had failed to allege recoverable damages. As to the cause of action for unfair competition, Costco argued that Citizens had failed to state a claim for unlawful or unfair competition, and further argued that Citizens lacked standing because it had not suffered any actual damages.

After briefing and a hearing, the demurrer was sustained with leave to amend. The trial court concluded that the cause of action for sale of stolen property could not proceed as Citizens had failed to allege that it was the owner of the apparel when it was stolen. The trial court concluded the cause of action for unfair competition was based only on "vague allegations of conspiracy," and that the cause of action for fraud did not allege fraud with sufficient specificity. The court granted leave to amend "because there are sufficient facts to indicate that a cause of action based upon unfair trade practices may exist, however, plaintiff should not rely upon unsubstantiated conclusions based upon the purported failure of Costco to provide responses to discovery to form the basis of the complaint. Plaintiff must allege actual facts rather than relying upon vague conclusions that fail to set forth sufficient facts to allow the reader of the pleading to discern what wrongdoing occurred."

Citizens declined to amend its first amended complaint, preferring to stand on its allegations. As such, the trial court dismissed the action, and Citizens filed a timely notice of appeal.

## ISSUES ON APPEAL

In this case, we first consider whether the trial court erred in denying Citizens's motion to compel discovery. We conclude that the identity of

Costco's suppliers is a protectable trade secret and that the court did not err. We next consider whether the court erred in sustaining the demurrer to Citizens's complaint. We conclude that Citizens properly alleged a cause of action for sale of stolen goods; but did not properly plead its cause of action for fraud with particularity. Finally, we conclude that Citizens lacks standing to pursue a cause of action for unfair competition.

## DISCUSSION

### 1. The Unacceptable Retailer

■ Before considering the specific issues presented by this case, it is helpful to provide an overview of the legal principles generally governing similar factual scenarios. The idea that a manufacturer of goods may seek to preserve the image of the goods by allowing their sale to consumers only by certain retailers is not a new one. Nor is it unknown to the law that such a manufacturer may seek to pursue a perceived unacceptable retailer in court, for the unauthorized sale of those goods. Several cases have arisen in which manufacturers have attempted to do just that, although this appears to be the first such case in California. Courts considering the issue have concluded that, in general, the sale of goods by an unacceptable retailer is not actionable by the manufacturer, if the retailer sought only to compete, and did not act wrongfully or maliciously.

As early as 1899, the issue arose between a silver manufacturer which sought to sell its silver only through jewelry stores, and a department store which was undercutting the jewelry stores' prices. (*Gorham Mfg. Co. v. Emery-Bird-Thayer Dry-Goods Co*. (W.D. Mo. 1899) 92 F. 774, affd. (8th Cir. 1900) 104 F. 243.) The manufacturer sued the department store for passing off other silver goods as those of the manufacturer; this claim failed on the evidence. In its opinion, the district court felt obligated to add, however, that it believed the real purpose of the suit was to stop the department store from undercutting the prices of the manufacturer's preferred sellers. The court noted that the manufacturer had attempted to discover the names of the department store's suppliers, and had been unsuccessful on its motion to compel "for the obvious reason that that was a trade secret, and the development of the fact was not essential to the proper maintenance of the [manufacturer]'s suit. When a manufacturer parts with his goods, and they go upon the market, any third person has the right to purchase and sell them as he pleases, without the consent of the manufacturer; and the courts will not

aid the manufacturer, under the guise of protecting his trade-mark or the suppression of unfair competition, by permitting him in such litigation to discover the sources from which an objectionable merchant—to him—obtains his supply." (92 F. at p. 779.)

In more recent times, the issue has often arisen in the context of hair care products or other beauty supplies which the manufacturer seeks to sell only through salons. When a non-salon retailer has sold the products, often at a lower cost than salons, the manufacturer has sued the retailer. In one such case, the court noted, "we believe that the social interests involved weigh in [the retailer]'s favor. [The retailers] are simply engaging in the purchase and sale of goods, an encouraged and generally lawful activity. While we do not disparage the social value of salon-only hair-care products, there is no significant social interest in using the courts to enforce a particular seller's scheme of distributing its goods. We note that [the manufacturer] possesses effective alternative means of enforcing its marketing concepts, principally by exercising its contractual rights against distributors or salons who participate in unwanted diversion." (*Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.* (D.N.J. 1994) 870 F.Supp. 1237, 1249.)

In several such cases, manufacturers had required their distributors to contract not to sell the products to retailers other than salons; when non-salon retailers sold the products, the manufacturers pursued those retailers for intentional interference with contract. The retailers prevailed when the manufacturers could prove only that the non-salon retailers had obtained products from distributors *known to be in breach* of their contracts, and could not establish that the retailers had *actively induced* the distributors' breach. (*John Paul Mitchell v. Randalls Food Markets* (Tex.Ct.App. 2000) 17 S.W.3d 721, 730–732; *Matrix Essentials, Inc. v. Cosmetic Gallery, Inc., supra*, 870 F.Supp. at p. 1248.) In contrast, when the non-salon retailer had falsely represented to the distributor that it was, in fact, a salon, this malicious, wrongful conduct was held sufficient to support a verdict for tortious interference with contract. (*Australian Gold, Inc. v. Hatfield* (10th Cir. 2006) 436 F.3d 1228, 1236–1237.) In this context, California law may well be the same.[7] (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 56–57 [77 Cal.Rptr.2d 709, 960 P.2d 513] [when the defendant's interference with the

---

[7] Similarly, there is a "competition privilege" which provides a complete defense to intentional interference with prospective economic advantage, as long as the defendant did not commit an unlawful or illegitimate act which is independently actionable. (*San Francisco Design Center Associates v. Portman Companies* (1995) 41 Cal.App.4th 29, 33 [50 Cal.Rptr.2d 716].)

contract is based on its own legitimate business purposes, and without fraud or other wrongful means, the interference may be permissible].)

Similarly, when manufacturers attempted to pursue non-salon retailers for violating their trademark, the retailers were held to be protected by the "first sale doctrine," which provides that, once a manufacturer sells its trademarked product to an authorized distributor, placing it in the stream of commerce, the manufacturer has no right thereafter to control the distribution of its product. (*John Paul Mitchell v. Randalls Food Markets, supra*, 17 S.W.3d at p. 736; see also *Sebastian Intern. v. Longs Drug Stores* (9th Cir. 1995) 53 F.3d 1073, 1074.) Again, the first sale doctrine might not protect a retailer engaging in malicious acts, such as when the retailer uses the manufacturer's trademark to give consumers the false impression that it is a favored retailer of the product. (*Australian Gold, Inc. v. Hatfield, supra*, 436 F.3d at p. 1241.)

We discuss this law because it sets forth the hurdles which are faced by any manufacturer who attempts to sue an "unacceptable" retailer for selling the manufacturer's goods. As a general rule, our society favors competition. Once the manufacturer has sold its goods to a distributor, the manufacturer can have no control over the retailers to whom the distributor resells the goods. If the manufacturer wishes to retain this control, it can best do so by means of its contract with its distributors. Even then, the manufacturer's remedy is generally against its distributor for breach of contract; the manufacturer can only pursue the retailer if the retailer maliciously induced the breach.

In this case, Citizens has not attempted to sue Costco for intentional interference with contract, intentional interference with prospective economic advantage, trademark violation, or related torts. Instead, Citizens has alleged that Costco's conduct was independently wrongful and malicious. That is, Citizens alleged that Costco knowingly sold *stolen* merchandise, or that Costco *conspired* with Citizens's own customers for the customers to commit *fraud* against Citizens. In this way, Citizens intends to bypass all of the authority which suggests that it cannot sue Costco simply for selling goods that Citizens would rather be sold only by preferred retailers.

### 2. *The Trade Secret Privilege Applies*

As the trial court ruled on Citizens's motion to compel discovery prior to the first amended complaint, we address the motion to compel discovery

before we address the demurrer to the first amended complaint. We review the trial court's order denying the motion to compel for an abuse of discretion. (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1123 [52 Cal.Rptr.3d 185].)

In resolving a claim of trade secret privilege, the party claiming the privilege has the initial burden of proving its existence. "Thereafter, the party seeking discovery must make a prima facie, particularized showing that the information sought is relevant and necessary to the proof of, or defense against, a material element of one or more causes of action presented in the case, and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit. It is then up to the holder of the privilege to demonstrate any claimed disadvantages of a protective order. Either party may propose or oppose less intrusive alternatives to disclosure of the trade secret, but the burden is upon the trade secret claimant to demonstrate that an alternative to disclosure will not be unduly burdensome to the opposing side and that it will maintain the same fair balance in the litigation that would have been achieved by disclosure." (*Bridgestone/Firestone, Inc. v. Superior Court* (1992) 7 Cal.App.4th 1384, 1393 [9 Cal.Rptr.2d 709].) This analysis is to be performed in the context of the pleadings; in determining whether the information is relevant and necessary to the issues presented by the case, the court must consider the causes of action and defenses alleged. (*Ibid.*)

The first step, then, is for the claimant to establish the information sought is a trade secret. The trial court concluded that Costco established that the identity of its sources was a trade secret, and we agree. The Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) defines trade secrets in California. " 'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d).) Costco provided substantial evidence on both elements.

First, Costco showed that the identity of its source(s) is information that derives economic value from not being generally known. Specifically, Costco provided the declaration of its vice-president—general merchandise manager, non-foods, to the effect that there is "intense competition" in the industry and Costco "does not want its competitors to have the same buying

advantages it has." Further, Costco provided evidence that many of its vendors "fear reprisals and other measures from manufacturers for selling merchandise [on the secondary market] to Costco." Costco believed that if it disclosed a vendor's identity, the manufacturer might eliminate the vendor's source of supply.

Second, Costco introduced evidence indicating that it takes reasonable efforts to maintain the secrecy of its sources. These efforts include not disclosing vendor information to the media or sources outside Costco; delegating the secondary market purchases of apparel to a subsidiary, which keeps its employees separate from other Costco buyers and employees; and keeping all purchase orders and related documents on a separate software system with access restricted to only specific employees.

Citizens does not question this evidence, but argues that, while Costco may have produced evidence that the identity of its vendors, *in general*, is a trade secret, it failed to establish that the identity of only its *specific* suppliers of Citizens denim apparel is a trade secret. The contention is meritless. Citizens has provided no authority for the proposition that when an entire category of information is a trade secret, an individual piece of such information is not. Instead, Citizens argues that it "does not compete with Costco, . . . and [therefore] has no competitive use for Costco's supplier information."[8] We disagree. While Citizens may not directly compete with Costco, Citizens distributes its jeans to retailers who do. Indeed, the very essence of Citizens's complaint is that Costco's sales hurt the sales of the authorized retailers by undercutting their prices, and further damage Citizens's goodwill by not upholding the image that Citizens has sought to develop and maintain for its products. Citizens clearly competes with Costco; if it did not, there would be no lawsuit. Furthermore, it is likely that if Citizens found out which of its customers was selling jeans to Costco, Citizens would attempt to cut off Costco's line of supply, as it would be legally entitled to do. In sum, the court did not err in concluding that the identity of Costco's sources of Citizens jeans constitutes a trade secret.

Thus, the burden shifted to Citizens to make a prima facie, particularized showing that the information sought is relevant and necessary to the proof of a material element of one or more causes of action presented in the case, and

---

[8] This argument appears better directed to the issue of a suitable protective order. That is, Citizens argues that while the information is a trade secret when considered in the context of Costco's competitors, there is no reason to keep the information secret from Citizens. As we discuss, Citizens's argument is meritless, however it is characterized.

that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit. At the time of the motion to compel, the operative complaint was the original complaint, in which Citizens's allegations of fraud did not appear. The sole causes of action then presented were the sale of stolen property and unfair competition based on the sale of stolen property. Citizens argued that the names of Costco's sources were relevant and necessary to the proof of two elements of its cause of action for the sale of stolen property—that the property was stolen and that Costco knew that it was. Citizens failed to meet this burden; in fact, Citizens's own evidence introduced in its motion to compel undermined any attempt to meet it. Specifically, Citizens attached to its motion its attorney's September 7, 2006 letter to Costco, which stated that "Each pair of Citizens . . . jeans carries an identifying cut number which Citizens . . . traces back to the specific retailer for whom the goods were manufactured." In other words, Citizens could determine, by looking at the cut numbers of the jeans, which of its customers could possibly have purchased those jeans. The attorney's letter goes on to state that, of three styles of jeans sold by Costco on the second occasion Citizens purchased its jeans at Costco, only *three* Citizens's customers had purchased more than one of the styles, and only *five* of its customers had purchased any of those styles and one of the styles found at Costco earlier. Thus, by looking at the identity of customers which had purchased more than one of the cuts of jeans ultimately found at Costco, Citizens could reduce the number of potentially involved customers to three or five.

Citizens sought disclosure of Costco's sources in order to establish that the jeans sold by Costco were stolen. Yet Citizens's evidence indicates that it could determine whether any of its jeans had been stolen from its customers, simply by inquiring of its customers whether they had experienced any thefts. If all of its customers who had purchased any of the six cut numbers denied having been the victims of theft, it would be established that the jeans were not stolen. If customers who had purchased the specified jeans reported thefts which matched the time period in which Costco obtained the jeans, and the quantities purchased by Costco, Citizens would then have evidence that the jeans had been stolen. Moreover, as it appears that Costco did not obtain its jeans from six different customers of Citizens, Citizens would only need to inquire of its relatively few customers who had purchased more than one of the relevant cuts of jeans in order to have its answer.[9] As such, it is simply not necessary for Citizens to know the identity of Costco's sources in order to

---

[9] Citizens never produced any evidence indicating that it would be unduly burdensome to simply ask its customers whether they had experienced any jeans thefts, and the letter from its counsel suggests that it would not have been. It could be inferred that Citizens did not ask its customers whether they had experienced thefts because Citizens knew what the answer would be—there had been no thefts, and Citizens's customers had intentionally sold the jeans to Costco's suppliers.

establish that the jeans were stolen. (See *John Paul Mitchell v. Randalls Food Markets, supra,* 17 S.W.3d at p. 739 [concluding that, since the products in question were marked with codes from which the manufacturer could have determined the relevant distributors, the trial court could have properly refused to require a retailer to disclose the names of its suppliers, since other means were available to the manufacturer].) Furthermore, the court permitted Citizens to discover the terms of the transactions by which Costco had purchased the jeans, which could also assist Citizens in proving that the jeans were stolen and that Costco was aware of this fact. This would be the case, for example, if the transactions showed that Costco obtained the jeans at a suspiciously low price, or out of the back of a van under cover of night. In short, Citizens did not meet its burden of demonstrating that the identity of Costco's sources was necessary to an element of a then pending cause of action, and the trial court did not abuse its discretion in denying the motion to compel.

### 3. Cause of Action for Sale of Stolen Property

We now discuss whether the trial court erred in sustaining Costco's demurrer to the first amended complaint. "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "A demurrer tests only the legal sufficiency of the allegations. It does not test their truth, the plaintiff['s] ability to prove them or the possible difficulty in making such proof." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 840 [33 Cal.Rptr.2d 438].)

We first consider the cause of action for sale of stolen property. Penal Code section 496, subdivision (a) provides criminal penalties for every person who sells property knowing it to be stolen. Subdivision (c) of that statute provides that "[a]ny person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

The trial court concluded that Citizens had failed to state a cause of action for violation of Penal Code section 496 because Citizens had not alleged that it had been the owner of the property when it was stolen. Costco does not

attempt to pursue this line of argument on appeal. The trial court was incorrect. Penal Code section 496, subdivision (c) provides a private right of action for "[a]ny person who has been injured" by the sale of stolen property. The plain language of the statute clearly does not restrict the right to bring a civil action to the owner of the stolen property.

 Costco argues, however, that the demurrer was properly sustained with respect to this cause of action because any injury suffered by Citizens was not *caused* "by a violation of subdivision (a)." Costco reasons that if Citizens was injured at all, it was injured simply because Costco, a low-cost warehouse store, had sold the jeans that Citizens wanted sold only by high-end retailers. Thus, Citizens would have suffered the same alleged injury if the jeans had been lawfully obtained by Costco. In short, Costco argues that Citizens was injured, if at all, by Costco's *sale* of the jeans, not by the alleged fact that the jeans sold *had been stolen.* Costco relies on cases such as *Capolungo v. Bondi* (1986) 179 Cal.App.3d 346, 354 [224 Cal.Rptr. 326], for the unremarkable proposition that when a plaintiff seeks to recover in negligence for a defendant's statutory violation, the plaintiff's injury must have been proximately caused by the statutory violation. *Capolungo* is a negligence per se case; the plaintiff bicyclist had been struck by a passing car when she swerved to avoid defendant's car, which had been parked in a loading zone for longer than the permitted 24 minutes. The plaintiff argued that she had been injured by the defendant's violation of the parking ordinance; the court disagreed as a matter of law, because the *purpose* of the loading zone time restriction was to provide access for loading and unloading, not to enhance traffic safety.[10] (179 Cal.App.3d at pp. 349, 352, 354.) We agree that a necessary consideration in the causation analysis is the purpose of the statute. We therefore turn our attention to the relevant language in Penal Code section 496.

Penal Code section 496 was amended in relevant part in 1972. Prior to the amendment, the statute did not apply to those who *sold* stolen property; it applied only to those who purchased, received, withheld or concealed it. Nor

---

[10] Costco also relies on *People v. O'Rear* (1963) 220 Cal.App.2d Supp. 927 [34 Cal.Rptr. 61], which held that a prosecution for misdemeanor hit and run cannot be compromised by the injured party, on the basis that the injured party is injured by the *accident,* not the defendant's conduct in fleeing the scene which violated the statute. Costco fails to mention that the analysis of this case from the appellate department of the superior court was rejected by a case from the Second Appellate District, *People v. Tischman* (1995) 35 Cal.App.4th 174 [40 Cal.Rptr.2d 650]. In *People v. Tischman,* the court concluded that a misdemeanor hit and run *may* be subject to compromise by the injured party. The court relied, in part, on the fact that the *purpose* of the hit and run prohibition is to guarantee that those causing property damage stay at the scene and exchange their information, so that injured parties may obtain compensation. (*Id.* at pp. 177–178.) In short, the appellate court was guided by the purpose of the misdemeanor statute, and concluded that individuals whose property was damaged in an accident are, in fact, injured when those who cause the damage leave the scene.

did it include the language currently found in subdivision (c), which permits any party injured by a violation of subdivision (a) to bring a civil action for damages. This language was added by Statutes 1972, chapter 963, section 1, pages 1739–1740. It was the result of Senate Bill No. 1068 (1972 Reg. Sess.).[11] The bill was introduced at the request of the California Trucking Association, with the goal of eliminating markets for stolen property, in order to substantially reduce the incentive to hijack cargo from common carriers. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1068 (1972 Reg. Sess.) as amended June 26, 1972.)[12] Yet while an early version of the bill limited the plaintiffs who may bring civil actions to *public carriers* injured by the knowing purchase, receipt, concealment, or withholding of stolen property (Sen. Bill No. 1068 (1972 Reg. Sess.) as amended in Senate, May 30, 1972), the bill was subsequently amended to expand the class of potential plaintiffs to include "[a]ny person who has been injured by" the knowing purchase, receipt, concealment or withholding of stolen property. (Sen. Amend. to Sen. Bill No. 1068 (1972 Reg. Sess.) June 26, 1972.) Moreover, that same amendment included the *sale* of knowingly stolen property within its prohibitions, and allowed any person injured by the sale of knowingly stolen property to bring a civil action. In other words, it is apparent that the statute, as enacted, broadly allows *anyone* injured by the sale of knowingly stolen property to bring a civil action against the seller, in order to reduce thefts by eliminating the market for stolen goods.

The facts alleged in the complaint in the instant action are that Costco obtained and sold knowingly stolen jeans; and Citizens is the manufacturer of those jeans, who allegedly suffered commercial injury by Costco's sale of stolen merchandise. As Penal Code section 496, as amended, has as its goal the elimination of markets for stolen merchandise by allowing those injured by the sale of knowingly stolen merchandise to recover damages, Citizens's action appears to be within the intended scope of the statute. We therefore conclude that Citizens's allegations of causation are sufficient to survive demurrer.[13]

Costco next argues that the demurrer was properly sustained with respect to this cause of action because Citizens did not suffer the type of damages recognized by the statute. Penal Code section 496, subdivision (c) provides that any person injured by the sale of stolen property "may bring an action for three times the amount of actual damages, if any, sustained by the

---

[11] We take judicial notice of the legislative history of the relevant amendment.

[12] The document in question does not on its face indicate its source as the Senate Judiciary Committee. Such identification, however, was confirmed to this court by Legislative Intent Service, Inc.

[13] Moreover, to the extent Costco argues that it would not be liable for any injuries Citizens would have suffered in the absence of the jeans having been stolen, the issue depends on factual issues not suited for resolution on demurrer.

plaintiff." Costco argues that the damages alleged by Citizens, specifically, the harm to its goodwill, do not constitute "actual damages" as set forth in the statute. Again, we disagree.

██ " 'Damages' are monetary compensation for loss or harm suffered by a person, or certain to be suffered in the future, as the result of the unlawful act or omission of another. [Citation.] 'Actual' is defined as 'existing in fact or reality,' as contrasted with 'potential' or 'hypothetical,' and as distinguished from 'apparent' or 'nominal.' [Citation.] It follows that 'actual damages' are those which compensate someone for the harm from which he or she has been proven to currently suffer or from which the evidence shows he or she is certain to suffer in the future. They are to be distinguished from those which are nominal rather than substantial, exemplary or punitive rather than compensatory, and speculative rather than existing or certain. [Citations.] In short, ' " '[a]ctual damages' is a term synonymous with compensatory damages . . . ." ' [Citations.]" (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1543–1544 [50 Cal.Rptr.2d 395]; see *Weaver v. Bank of America* (1963) 59 Cal.2d 428, 437–438 [30 Cal.Rptr. 4, 380 P.2d 644].) Indeed, in the more than 150 times the term "actual damages" is used in California statutes, it is never "used to distinguish between different measures of compensatory damages." (*Saunders v. Taylor, supra,* 42 Cal.App.4th at p. 1544.)

Despite this overwhelming authority, Costco argues that "actual damages" as used in Penal Code section 496, refers only to the value of the property stolen, and not to damages to a plaintiff's goodwill or reputation. Costco relies on *Balmoral Hotel Tenants Assn. v. Lee* (1990) 226 Cal.App.3d 686 [276 Cal.Rptr. 640], a First Appellate District case which held that a local regulation providing for trebling of "actual damages" for wrongful eviction does not allow the trebling of emotional distress damages. We are unpersuaded for numerous reasons. First, *Balmoral* itself recognized that "actual damages" ordinarily means "compensatory damages," and noted that the legislative intent of the regulation at issue appeared different. (*Id.* at pp. 689–690.) Second, the court in *Balmoral* was concerned with the constitutional issues that may arise from *trebling* a large award for mental suffering; the mental suffering damages themselves would nonetheless be awarded in tort.[14] (226 Cal.App.3d at pp. 689, 691–692.) Third, *Balmoral* disagreed with an earlier case which interpreted the same regulation to encompass all compensatory damages

---

[14] Whether any damages awarded to Citizens in this action would be subject to trebling is not a matter for resolution on demurrer. Interestingly, Costco states in its brief that "damages for a theft victim's economic loss may be relatively slight if the property stolen was not valuable, but damages to Citizens'[s] reputation are not limited by any particular formula, *and could provide sufficient incentive to sue without being trebled.*" (Italics added.) This appears to concede that Citizens's reputation damages should be recoverable, although not trebled.

(*Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1601 [265 Cal.Rptr. 719]), thus creating a split in the law. Finally, a subsequent case from the Second Appellate District limited *Balmoral* to its unique circumstances. (*McNairy v. C.K. Realty* (2007) 150 Cal.App.4th 1500, 1508 [59 Cal.Rptr.3d 429].) In short, *Balmoral* provides no authority that the "actual damages" recoverable in a suit pursuant to Penal Code section 496, subdivision (c), are anything other than compensatory damages.

■ As Citizens properly alleged all elements of a cause of action under Penal Code section 496, subdivision (c), the trial court erred in sustaining the demurrer with respect to this cause of action. The judgment of dismissal must therefore be reversed. We nonetheless address the remaining causes of action for guidance to the trial court on remand.

### 4. *Allegations of Fraud*

The trial court sustained the demurrer with respect to the cause of action for fraud on the basis that Citizens had not sufficiently pleaded fraud with particularity. As Citizens declined to amend its complaint, we consider only the allegations as pleaded.

■ "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 [49 Cal.Rptr.2d 377, 909 P.2d 981].) This requirement serves two purposes. First, it gives the defendant notice of the definite charges to be met. Second, the allegations "should be sufficiently specific that the court can weed out nonmeritorious actions on the basis of the pleadings. Thus the pleading should be sufficient ' "to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." ' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216–217 [197 Cal.Rptr. 783, 673 P.2d 660].) Thus, a plaintiff must plead facts which show how, when, where, to whom, and by what means the representations were made. (*Lazar v. Superior Court, supra*, 12 Cal.4th at p. 645.) When the defendant is a corporate defendant, the plaintiff must further allege the names of the persons who made the representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. (*Ibid.*) There are certain exceptions to the particularity requirement. "Less specificity is required when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy.' " (*Committee on Children's Television, Inc. v. General Foods Corp., supra*, 35 Cal.3d at p. 217.)

Against this framework, we consider Citizens's allegations of fraud. Citizens alleged that, pursuant to the conspiracy, "the Customer Does represented or implied to [Citizens] that they were purchasing current season [Citizens] apparel for sale in their own retail stores and failed to disclose to [Citizens] that they planned to re-sell the merchandise to the Source Does, either directly or indirectly through intermediaries, for eventual sale to Costco. The Customer Does and the other defendants knew that [Citizens] would not have sold [Citizens] apparel to the Customer Does if this material fact had been disclosed." Citizens further alleged, "This representation was false, and the Customer Does fraudulently concealed their true intentions."

Citizens's allegations of fraud are precisely the sort of vague allegations that the particularity requirement is intended to guard against. Citizens failed to plead facts which show how, when, where, to whom, and by what means the representations were made. It is impossible to tell from the complaint whether Citizens is alleging that the Customer Does promised, in writing, not to resell the jeans to Costco, which might be actionable; or whether Citizens is alleging that the Customer Does simply failed to inform it of their secret intent to so resell the jeans, which may not be. If Citizens's fraud cause of action is based only on a failure to disclose, "it is necessary to show that the defendant 'was under a legal duty to disclose'" the undisclosed fact. (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 807 [66 Cal.Rptr.3d 543].) Citizens failed to plead that any of its customers were under a duty to disclose their intentions regarding resale of the purchased jeans. Thus, if Citizens's fraud allegations are based on a mere failure to disclose, Citizens fails to state a cause of action. The allegations are simply not sufficiently specific for the court to weed out nonmeritorious claims, and therefore, the cause of action was not pleaded with sufficient specificity.

Citizens suggests that the specificity requirement should be relaxed as the relevant facts were within the knowledge of defendants. We disagree. While it may be that the facts regarding *any conspiracy* between Costco and the Doe defendants are known by defendants, Citizens has knowledge of the facts of the fraud itself. As Citizens knew the unique cut numbers of the jeans sold to Costco, Citizens could determine which of its customers might have been involved, and could therefore plead how, if at all, those customers represented to it that the jeans they purchased would not be resold to Costco. Citizens could, at the very least, allege how, when, and in what manner its customers generally promised not to resell the jeans to Costco, or had a duty to disclose any secret intentions to so resell. With only the broad allegations that some of its customers, at some time, in some way, expressly or impliedly, misrepresented or failed to disclose, Citizens has wholly failed to plead fraud with the necessary particularity.

## 5. *Unfair Competition*

▇ Business and Professions Code section 17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." Citizens alleges Costco committed "unlawful" practices by means of its sale of stolen property, and "unfair" practices by means of its conspiracy to commit fraud. While it would appear that Citizens's cause of action for unfair competition rises and falls with its other causes of action based on the same allegations, there is a more fundamental matter which bars the cause of action in its entirety. Specifically, Citizens lacks standing.

Business and Professions Code section 17204 sets forth the standing requirements for an unfair competition action. It provides that an individual may pursue such an action only if that person has "suffered injury in fact and has lost money or property as a result of the unfair competition." Business and Professions Code section 17203 provides that any person who engages in unfair competition may be enjoined by any court of competent jurisdiction. The statute also provides that the court may order a party who has engaged in unfair competition to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." The question arises whether an individual who has not lost "money or property" of the type that would be subject to a restitution order under Business and Professions Code section 17203 could still have "lost money or property" of the type that would confer standing under Business and Professions Code section 17204. Stated more concretely, Citizens alleges harm to its goodwill, which would not entitle Citizens to restitution. (See *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1151 [131 Cal.Rptr.2d 29, 63 P.3d 937].) Is the alleged harm to its goodwill nonetheless a loss of "money or property as a result of the unfair competition" sufficient to confer standing on Citizens, so that Citizens may pursue solely an injunctive remedy?

It is not. "Because remedies for individuals under the [unfair competition law] are restricted to injunctive relief and restitution, the import of the [Business and Professions Code section 17204 loss of money or property] requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution." (*Buckland v. Threshold Enterprises, Ltd., supra,* 155 Cal.App.4th at p. 817; see *Walker v. USAA Cas. Ins. Co.* (E.D.Cal. 2007) 474 F.Supp.2d 1168, 1172.) As Citizens could not allege having suffered losses which would entitle it to restitution, it has no standing to pursue a cause of action for unfair competition.

## *DISPOSITION*

The judgment is reversed and the matter remanded for further proceedings consistent with this opinion. Each party is to bear its own costs on appeal.

Klein, P. J., and Kitching, J., concurred.