Filed 9/17/20  Pancho Villa No. 2, LLC v. F&R Real Estate, Inc. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| PANCHO VILLA NO. 2, LLC et al., | D075306 |
| Plaintiff, Cross-defendant and Appellant, | |
| v. | (Super. Ct. No. 37-2016-00025716) |
| F&R REAL ESTATE, INC., | |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Affirmed in part, reversed in part with directions to strike F&R's cause of action for fraudulent misrepresentation.

Curry Advisors and K. Todd Curry for Plaintiff, Cross-defendant and Appellant.

Marshall Law and Daniel E. Marshall for Defendant, Cross-complainant and Respondent.

Pancho Villa No. 2, LLC and Stephen W. Boney (Pancho Villa) appeal

an order denying their motion under Code of Civil Procedure section 425.16[1]

to strike claims brought against them by F&R Real Estate, Inc. (F&R).

Pancho Villa is a supermarket operator owned by Boney.  In July 2014,

Pancho Villa entered into a lease agreement with F&R for commercial real

property for the operation of a supermarket.  Pancho Villa made

improvements to the property that F&R contends violate the lease and were

not properly permitted by the City of San Diego (City).

To settle the dispute, Pancho Villa brought suit, seeking declaratory

relief and an injunction to prevent F&R from removing the improvements

that Pancho Villa had made to the property.  After the trial court granted a

preliminary injunction, F&R filed a cross-complaint against Pancho Villa,

which F&R later amended to add causes of action for negligence and

fraudulent misrepresentation.  Pancho Villa responded with a motion to

strike the new claims under the anti-SLAPP statute.  Pancho Villa now

challenges the trial court's order denying its motion, based on the court's

finding that the claims did not arise from protected activity.  We agree with

the trial court that F&R's negligence cause of action does not arise from

---

[1]     Further statutory references are to the Code of Civil Procedure unless
otherwise indicated.  Section 425.16 is commonly referred to as the anti-
SLAPP (strategic lawsuit against public participation) statute.  (*Jarrow
Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

protected activity and affirm its denial of the anti-SLAPP motion as to this claim.  However, we disagree with the trial court's conclusion that F&R's cause of action for fraudulent misrepresentation does not arise from protected activity.  Further, because F&R has not demonstrated a probability of prevailing on the merits, we reverse the trial court's order denying Pancho Villa's motion to strike this cause of action and direct the trial court to strike the cause of action.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2014, Boney purchased a supermarket located in the San Ysidro neighborhood of San Diego.  In July 2014, Boney assigned the purchase agreement to Pancho Villa and entered into a lease agreement with F&R, the owner of the commercial shopping center where the store is located.  The lease was eventually expanded in 2016 from 8,000 square feet to 12,200 square feet to include several other suites in the shopping center.  The lease has an initial term of five years, and contains options to continue the lease for five additional five-year terms.

After it entered into the lease, Pancho Villa made improvements to the property that F&R alleges cost over $1.7 million.  Thereafter, a dispute arose about the improvements, prompting Pancho Villa to file the instant lawsuit against F&R on July 28, 2016.  Pancho Villa's complaint alleges that F&R breached the lease's covenant of quiet enjoyment by (1) constructing a

3

stairway blocking potential patrons' view of the supermarket, (2) contending that improvements made by Pancho Villa violated the lease when the lease allowed Pancho Villa to make changes without F&R's approval, (3) interfering with parking for the store's customers, and (4) threatening to remove Pancho Villa's improvements to the property. Pancho Villa's complaint also sought a permanent injunction to prevent F&R's removal of improvements, and a judicial determination of the parties' rights under the lease.

Pancho Villa simultaneously brought an ex parte application for a temporary restraining order. After a hearing on the application the following day, based on an agreement between the parties the trial court entered a temporary restraining order requiring Pancho Villa to remove its barbeque from the shopping center's parking lot and to refrain from using its pick-up window, and restraining F&R from removing any improvement to the property made by Pancho Villa. The court set a hearing on the preliminary injunction for August 26, 2016.

On August 11, 2016, F&R served Pancho Villa with a "30[-]day notice to perform covenant or quit" asserting that Pancho Villa was in violation of the lease because it had "made alterations to the Premises in violation of applicable municipal, state, and/or federal authorities," blocked "parking spaces on the left hand side of the entrance with an unauthorized outdoor

4

grill," "placed an unauthorized counter along the front of the building blocking access along the sidewalk" to the supermarket's entrance and to other tenants' establishments, and made various other changes to the property that F&R had not approved. The notice stated that F&R would begin eviction proceedings if Pancho Villa did not remedy the lease violations. At the end of August, counsel for the parties exchanged antagonistic e-mails and F&R's counsel threatened to report Pancho Villa's contractor to authorities for not having workers' compensation insurance.

On September 2, 2016, the City sent a Civil Penalty Notice and Order (CPNO) to F&R. The notice stated that on August 11, 2016, the City had inspected the store at F&R's urging and observed several violations of the municipal code based on the property owner's failure to obtain permits for recent construction work. The notice directed F&R to correct the violations by submitting plans to the City's code enforcement division within 45 days. On September 7, 2016, counsel for F&R forwarded the CPNO to Pancho Villa with a letter reminding it that all plans involving the common area must be submitted to F&R for approval prior to submission to the City, and stating that F&R would not approve any plans "providing for the pick up window, nor the ledge/counter along the exterior of the wall" because those improvements were blocking sidewalk access. The letter also indicated that

5

approval would not be unreasonably withheld and requested proof of workers' compensation insurance for any contractor hired by Pancho Villa.

On September 29, 2016, after briefing and a hearing, the trial court entered a preliminary injunction restraining F&R from: (1) Harassing Pancho Villa or its employees and patrons, (2) removing any improvements to the property, and (3) breaching the covenant of quiet enjoyment. The order also restrained Pancho Villa from using the window that it had installed for food pickup and required it to post a $10,000 bond. On November 22, 2016, F&R served Pancho Villa with a second 30-day notice to perform covenant or quit, asserting that Pancho Villa remained in violation of the lease and adding new violations to those set forth in its initial notice.

In January 2017, F&R filed its cross-complaint for breach of contract, breach of the implied covenant of good faith and fair dealing, ejectment, declaratory relief, injunctive relief, and indemnity.[2] After the parties engaged in discovery and other litigation, in May 2018, F&R moved to amend its complaint to add two additional defendants, Pancho Villa's contractor, Gholam Reza Samandari, and the draftsman responsible for designing the improvements to the premise, Abbas Keshavarzi. The amended complaint

---

[2]     On September 16, 2016, F&R filed an unlawful detainer action, which was deemed related to the instant case and reassigned to the same trial judge. The unlawful detainer case was dismissed after the ejectment claim was included in F&R's cross-complaint.

6

also added the causes of action for negligence and fraudulent misrepresentation that are at issue in this appeal. The trial court granted the motion, and the amended cross-complaint (ACC) was filed on June 18, 2018.

According to the ACC, on October 17, 2016, Pancho Villa submitted an application for a building permit to address the violations contained in the City's CPNO. The ACC asserts that Pancho Villa did not provide the application to F&R and that F&R only discovered the existence of the permit application on February 7, 2017 at the deposition of Keshavarzi. According to the ACC, in June 2017, F&R deposed Samandari and the City's code enforcement officer, Doug Arnold, and discovered that the permit applications submitted by Pancho Villa contained misrepresentations about the improvements that Pancho Villa had made to the property.

The Arnold deposition prompted F&R to file a complaint with the City's code enforcement department, which resulted in another inspection by code enforcement and the fire department. The ACC alleges that this inspection identified deficiencies in Pancho Villa's permit application, prompting Pancho Villa to submit another permit application that the ACC alleges contained additional misrepresentations.

F&R's negligence claim, the ACC's fifth cause of action, alleges that Pancho Villa breached a duty of care owed to F&R by violating the lease,

7

misclassifying the property in its permit applications to the City, making unpermitted improvements to the property, and misrepresenting the various changes to the property in its permit applications. F&R's misrepresentation claim, the ACC's sixth cause of action, also asserts that Pancho Villa misrepresented the improvements that it made to the property to the City in its permit applications, which caused the City to issue permits without understanding the full scope of the work that was performed.[3] The sixth cause of action also asserts that "[a]lthough these false misrepresentations were made to the City of San Diego, [Pancho Villa, Samandari, and Keshavarzi] made them intending or reasonably expecting that the misrepresentations would produce permits that Landlord would be deceived into to accepting as legitimate." Finally, F&R alleges that as a result of the misrepresentations, it sustained damages consisting of costs of repair to the premises, "costs of investigation and expert witness services, increased attorney's fees and cost, loss of use, loss of rent, and diminution of value of Premises."

On August 21, 2018, Pancho Villa filed its motion to strike F&R's causes of action for negligence and misrepresentation under the anti-SLAPP statute. Pancho Villa's motion also sought to strike any allegations in the

---

[3] The appellate record does not contain the permit applications or any permit issued by the City.

8

amended cross-complaint that related to its petitioning rights. F&R opposed

the motion, asserting that the fifth and sixth causes of action in the ACC did

not arise from protected activity because false statements are not protected

by free speech rights.[4] F&R also argued that even if the statements did

constitute protected activity, striking the claims was not warranted because

it was likely to prevail on the merits.

The trial court agreed with F&R that its negligence and fraudulent

misrepresentation causes of action did not arise from protected activity. The

court concluded that F&R's negligence and fraud claims (and resulting

damage) arose from Pancho Villa's construction activities on the property and

that the permitting activity by Pancho Villa was merely incidental to the

construction. The court did not reach the issue of whether F&R was likely to

prevail, the second prong of the anti-SLAPP analysis. Pancho Villa now

challenges the court's order.

DISCUSSION

I

*Law governing anti-SLAPP motions*

Section 425.16 sets a procedure for striking "lawsuits that are 'brought

primarily to chill the valid exercise of the constitutional rights of freedom of

---

[4]     F&R does not advance this argument on appeal.

speech and petition for the redress of grievances.' " (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 197.) Under section 425.16, the "trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)

The statute provides in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Resolution of an anti-SLAPP motion "thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. [Citation.] If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819–820.) " 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Id.* at p. 820.)

10

An " 'act in furtherance of a person's right of petition or free speech . . . ' " includes any written or oral statement made before a legislative, executive, or judicial body, or any other official proceeding authorized by law, or in connection with an issue under consideration by such body or in such proceeding.  (§ 425.16, subd. (e)(1) & (2).)  "The moving party need not separately demonstrate that such an oral or written statement concerns an issue of public significance."  (*Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 271.)

For purposes of both prongs of an anti-SLAPP motion, "[t]he court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence.  Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff . . . ." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.) With respect to the second prong, "in order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have ' "stated and substantiated a legally sufficient claim." '  [Citations.]  'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' "  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89.)

11

"The second prong . . . is considered under a standard similar to that employed in determining nonsuit, directed verdict or summary judgment motions." (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672– 673.)  A plaintiff "need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278–279 (*Soukup*).)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo.  [Citation.]  [Like the trial court, we] consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).)" (*Soukup, supra*, 39 Cal.4th at p. 269, fn. 3.)  Our de novo review "includes whether the anti-SLAPP statute applies to the challenged claim." (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.)  "[W]e apply our independent judgment to determine whether" the claim arises from acts done in furtherance of Pancho Villa's "right of petition or free speech in connection with a public issue." (*Ibid.*)  "Assuming these two conditions are satisfied, we must then independently determine, from our review of the record as a whole, whether [F&R] has established a reasonable probability that [it will] prevail on [its] claims." (*Ibid.*)

When, as here, the trial court does not reach the second prong of the anti-SLAPP analysis, this court may consider the issue in the first instance.

12

(See *Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345, 1355 ["we have discretion to decide the issue ourselves, since it is subject to independent review"].) Particularly if no factual findings are required to determine whether the plaintiff has shown a probability of prevailing on its claims, remand is not necessary. Rather, this court has "the authority to decide the issue ourselves." (*Santa Clara Waste Water Co. v. County of Ventura Environmental Health Division* (2017) 17 Cal.App.5th 1082, 1091 (*Santa Clara Waste Water Co.*).) If the question can be decided "as a matter of law, it would be a waste of judicial resources to remand the matter to the trial court." (*Ibid.*)

II

*Negligence Cause of Action*

Pancho Villa argues that F&R's cause of action against it for negligence arises from Pancho Villa's protected speech because the bases for the claim are statements and omissions that Pancho Villa made in its permit applications to the City. Pancho Villa then asserts that the first prong of the anti-SLAPP statute is satisfied because F&R alleges that damage to its building arose from those communications. To support its argument, Pancho Villa points to paragraphs 68 and 75 of the ACC's negligence cause of action.

That cause of action sets forth two independent "counts," the first for "negligence" and the second for "[r]es [i]psa [l]oquitor." (Boldface omitted.)

13

Paragraph 68, which is part of the negligence count, alleges that Pancho Villa

breached the duty of care owed to F&R:

> "(i) By failing to observe Paragraph 10 of the Lease where it states that the tenant 'shall faithfully observe in said use all municipal ordinances and state and federal statures now in force or which shall hereinafter be in force . . . . '

> "(ii) By misclassifying the building on the Premises as being a 'Type V-A' as opposed to the building's true rating as a V – B in order to gain the advantage of a greater work area with fewer building restrictions; such misclassifications were made by cross-defendants and each of them when they filed with the City of San Diego the September 20, 2017 amended Plans;

> "(iii) By engaging in un-permitted improvements in 2016; further by the removal of an existing firewall along the south end of the building; and by failing to report the removal of said firewall to the City of San Diego when cross-defendants submitted the September 20, 2017 amended Plans;

> "(iv) By representing two walk in coolers as 'existing' but continuously failing to submit supporting permits for the 'existing' coolers and two other coolers as well;

> "(v) By representing the kitchen as 'existing' when in fact the area had been reconfigured without a permit from a tortilla making locale to a kitchen without appropriate testing of utilities such as water and sewer lines.

> "(vi) By omitting to add to the amended Plan that the storefront windows facing the parking lot had been modified; by failing to show the presence of the steps in the exiting pathway through the 'bakery;' and by failing to show the removal of the previously load-bearing framing at garage area;

> "(vii) Other omissions and misrepresentations made to the City of San Diego to be proven at trial

> "(viii) Based on information and belief, [Pancho Villa], acting by and through Samandari and Keshavarsi, took such actions knowing them to be improper, and contrary to city ordinances,

14

and to the diminishment of Cross-complainant's real property, and value and improvements thereon. Based upon information and belief, co-defendant Boney ratified the actions of [Pancho Villa], Samandari, and Keshavarsi.

"(ix) Based on information and belief, Co-defendant Boney, despite knowledge of the damage to Premises as listed hereinabove, continues to maintain the premises in this unpermitted state, in further damage to the Premises."

The next paragraph alleges that as a result of this negligent conduct, F&R suffered damages in the form of structural damage to the property, loss of value to the property, loss of rents from other neighboring tenants, and attorney fees and court costs. F&R then alleges that the defendants "failed to act reasonably and to prevent foreseeable damage to Premises by negligently designing, constructing and/or maintaining the premises and unreasonably allowing the mold producing condition to progress all to the damage of the Premises and unreasonably exposing customers, employees and neighboring tenants to the risk of fire for not adequately building a fire suppression system, and unreasonably exposing customers, employees and neighboring tenants to the risk of damage from earthquake by not adequately constructing the structural elements of their remodels." At paragraph 75, the complaint repeats the same allegations of the breach of the duty of care in the count for res ipsa loquitor, and identifies additional details of the property damage caused by those breaches, including structural changes rendering the property unsafe and the construction of walls that "were not properly sealed

15

on top and at their base to eliminate water vapor generated from poorly constructed walk in coolers," resulting in mold in the market and in a neighboring tenant's property.

Contrary to Pancho Villa's assertion, its alleged liability for the negligence claim does not arise from protected petitioning activity. Rather, the ACC makes clear that the alleged liability arises from physical construction Pancho Villa performed on the property. "A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citations.] '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' [Citations.] Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063 (*Park*).)

The negligence claim does not tie Pancho Villa's alleged liability to statements—or omissions—that Pancho Villa made to the City in its permit applications. Instead, the conduct that underlies the cause of action is Pancho Villa's physical alteration of the property, and the damages that F&R

16

claims to have suffered as a result of Pancho Villa's alleged negligent conduct are damages to the property itself, both physical and diminution in value. F&R does not base liability on protected speech; any liability exists independent of Pancho Villa's permit applications.  (See *Park, supra*, 2 Cal.5th at p. 1063 [where claim has no basis but for protected activity, the claim " 'falls squarely within the ambit of the anti-SLAPP statute's "arising from" prong' "].)  For this reason, Pancho Villa's motion to strike F&R's negligence cause of action fails to satisfy the first prong of the anti-SLAPP analysis.  The trial court's denial of the motion with respect to this claim is affirmed.[5]

---

[5]     In its reply brief, Pancho Villa argues that "the allegations [of] protected activity" within the fifth cause of action should have been stricken by the trial court.  Pancho Villa further contends that once such allegations are removed, the cause of action should be dismissed because it is "based on breaches of duties arising solely pursuant" to the lease.  Pancho Villa cites *Erlich v. Menezes* (1999) 21 Cal.4th 543, 550–554 to support its assertion that a negligence claim that amounts to a breach of contract is not permitted unless there is a breach of duty independent from the contract.  These issues are not properly before this court.  Pancho Villa did not seek dismissal of specific allegations arising from protected activity within the fifth cause of action in its anti-SLAPP motion, has not identified which specific allegations should be stricken, and raised the issue only in its reply brief.  In addition, while there may be merit to Pancho Villa's contention that F&R's negligence cause of action is not viable under *Erlich*, this issue was not considered by the trial court and is not properly before this court on appeal from the denial of Pancho Villa's anti-SLAPP motion.

17

## III

### *Misrepresentation Cause of Action*

Pancho Villa next argues that the trial court erred when it concluded that F&R's cause of action for fraudulent misrepresentation does not arise from protected activity. Pancho Villa correctly states that F&R's claim for deceit based on misrepresentation has four elements: "(1) A misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." Pancho Villa argues that F&R's allegations for each element of this claim arise from Pancho Villa's protected speech in its permit applications, and thus, that the trial court's finding to the contrary was error.

F&R responds that Pancho Villa has cherry-picked from among the allegations against it and improperly focuses on just four paragraphs of the 98-paragraph ACC. F&R also argues that all of the claims in its ACC are based on Pancho Villa's "breach of covenants and conditions of the lease agreements, and illegal construction activities (Conduct) and not protected activity." Finally, F&R asserts that even if its claim arises from protected activity, it has shown a probability of prevailing on the merits. As we explain, we agree with Pancho Villa that this claim arises from protected activity, and we reject F&R's argument that it can prevail on the merits of

18

this claim.  We therefore reverse the trial court's order denying Pancho Villa's motion to strike F&R's cause of action for fraudulent misrepresentation and direct the trial court to issue an order striking the cause of action from the ACC.

## A

Unlike F&R's negligence claim, the asserted liability for F&R's fraudulent misrepresentation claim purports to arise from false and misleading statements, and omissions, in the permit applications that Pancho Villa submitted to the City.  Specifically, the sixth cause of action asserts that Pancho Villa made false statements to the City intending to obtain permits that F&R would be forced to accept as legitimate.  F&R bases Pancho Villa's alleged liability for fraudulent misrepresentation on the act of submitting permit applications containing allegedly false information to the City.  The allegedly false and misleading statements in the permit applications thus form the basis for the fraudulent misrepresentation claim.

The cause of action therefore arises from protected activity.[6] (See § 425.16, subd. (e)(2); *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 272 ["submission of the High Density Tract Map to the planning commission and city council" are acts "in the course of an official proceeding and were clearly in furtherance of the [defendants'] right of petition and free speech"]; *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 194–195, disapproved on other grounds by *Baral v. Schnitt* (2016) 1 Cal.5th 376 [submission of sitemaps to the city in connection with permitting process, an official proceeding, satisfies first prong].)

B

Because the cause of action arises from protected activity, we next consider the second prong of the anti-SLAPP statute analysis and decline Pancho Villa's request to remand the matter to the trial court to consider this

---

[6] Although we disagree with the trial court's conclusion with respect to whether the fraudulent misrepresentation cause of action arises from protected speech, the court's decision is understandable given that F&R does not allege that it suffered any damages as a result of the speech at issue. Rather, the only damages that F&R alleges for this claim are "costs of repair including the costs to prevent further harm to Premises, costs of investigation and expert witness services, increased attorney's fees and cost, loss of use, loss of rent, and diminution of value of Premises." The trial court accurately noted that both new claims "alleged that [F&R] was damaged from conduct arising out of the construction of the premises, not directly upon the permitting activity of seeking permits from the City." Thus, the trial court's analysis of prong one relied on the inadequacy of F&R's pleading, which we discuss in our analysis of the second prong.

20

issue.  Because the second prong can be decided as a matter of law, we exercise our discretion to reach this issue and avoid the waste of judicial resources that would result if the case were remanded.  (*Santa Clara Waste Water Co.*, *supra*, 17 Cal.App.5th at p. 1091.)

F&R's fraudulent misrepresentation claim is insufficiently pleaded and F&R has not otherwise shown that it can prevail on the merits.  Specifically, the ACC contains no allegations, and F&R has not presented any evidence, to support its assertions (1) that Pancho Villa intended to induce F&R's reliance on the purportedly fraudulent statements and omissions, or (2) that F&R justifiably relied on Pancho's Villa's fraudulent statements and omissions. Further, F&R fails to allege, or to show any evidence, that the purportedly fraudulent statements and omissions caused it damage.

*1. Legal Standard*

" 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." (*Id.* at p. 645.)  "This requirement serves two purposes.  First, it gives the defendant notice of the definite charges to be met.  Second, the allegations 'should be

21

sufficiently specific that the court can weed out nonmeritorious actions on the basis of the pleadings.  Thus the pleading should be sufficient " 'to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud.' " ' [Citation.]  Thus, a plaintiff must plead facts which show how, when, where, to whom, and by what means the representations were made." (*Citizens of Humanity, LLC v. Costco Wholesale Corp.* (2009) 171 Cal.App.4th 1, 20 (*Citizens of Humanity, LLC*).)

Further, "[i]t is settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation." (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1088; see also *Geernaert v. Mitchell* (1995) 31 Cal.App.4th 601, 608 ["Consistent with the rule requiring specificity in pleading fraud ([citation]), a complaint must state ultimate facts showing that the defendant intended or had reason to expect reliance by the plaintiff or the class of persons of which he is a member"].)  "When the defendant is a corporate defendant, the plaintiff must further allege the names of the persons who made the representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." (*Citizens of Humanity, LLC, supra*, 171 Cal.App.4th at p. 20.)

22

*2. Reliance*

With respect to the elements of intent to induce reliance and justifiable reliance, F&R alleges only that Pancho Villa, and its contractor and draftsman, made fraudulent statements and omitted material information from its permit applications to the City. The ACC asserts that Pancho Villa's fraudulent permit applications were "meant to induce, and in fact did induce, *the City of San Diego Code Enforcement Department, and the Building Development Services Department* to grant permits to Pancho Villa No.2, LLC without understanding the entire scope of Pancho Villa's remodel performed without permits, and without understanding the fire issues, safety issues and structural issues Pancho Villa was occulting." (Italics added.) These allegations are insufficient because they do not claim that Pancho Villa made false or misleading statements to F&R, that Pancho Villa intended that F&R rely on the purportedly fraudulent permit applications or that F&R in fact relied on the false statements and omissions. Rather, the ACC pleads only that the City relied on the fraudulent permit applications to issue permits (a fact that F&R provides no evidence to support).

The sixth cause of action for fraudulent misrepresentation alleges that "Pancho Villa was then going to use the obtained permits to establish at trial both (i) compliance with its lease with F&R Real Estate, Inc. and; (ii) compliance with the law" and that "[a]lthough these false

23

misrepresentations were made to the City of San Diego, [Pancho Villa, Samandari, and Keshavarzi] made them intending or reasonably expecting that the misrepresentations would produce permits that [F&R] would be deceived into to accepting as legitimate." These allegations do not show that Pancho Villa intended that F&R rely on the false permit applications, but rather, that Pancho Villa hoped to obtain permits that would negate F&R's allegation that Pancho Villa had violated the lease.

Further, F&R's briefing in this court and in the trial court make clear that it did not in fact rely on the permit applications. Instead, F&R challenged the applications repeatedly and successfully prevented issuance of the permits by the City. Indeed, F&R's respondent's brief concedes that "it is the ongoing unauthorized and *unpermitted* construction that threatens the value of [its] property[,] not the statements made to the City by [Pancho Villa] or [its] agents." Further, F&R asserts "[t]he fraud itself did not cause the harm. The permitting process evidenced but did not cause the harm" and "w[as] incidental to the ultimate damages of loss of value to the property caused by the unauthorized and unpermitted construction." F&R also states that "[t]he ACC is not targeting communications[,] but the underlying conduct and delays associated with the permitting process associated with the inaction[,] not words[,] of [Pancho Villa]." While these statements are addressed to F&R's argument that its fraudulent misrepresentation cause of

24

action does not arise from protected activity, they directly contradict F&R's claim that it relied on the allegedly false permit applications. In sum, F&R's failure to show its own detrimental reliance on the alleged misrepresentations and omissions is fatal to its fraudulent misrepresentation claim.

*3. Causation & Damages*

Finally, F&R's cause of action for fraudulent misrepresentation is also insufficient because F&R (1) has not pleaded with specificity, or shown, what damages it sustained as a result of the alleged false and misleading statements or (2) how its damages were caused by the deceit. (See *Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1818 ["Deception without resulting loss is not actionable fraud. [Citation.] 'Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown' "].) Instead, as discussed in the prior section, F&R concedes that the damages it claims—identified in the ACC as "costs of repair including the costs to prevent further harm to Premises, costs of investigation and expert witness services, increased attorney's fees and cost, loss of use, loss of rent, and diminution of value of Premises"—were the result of the physical changes that Pancho Villa made to the property, not Pancho Villa's attempt to obtain permits. F&R's briefing thus makes plain that it does not claim that it was

25

damaged by the purportedly false permit applications.  Instead, its claims are that it was damaged by "the underlying conduct and delays associated with the permitting process associated with the inaction," not Pancho Villa's "words."  F&R has not shown a probability of prevailing on its cause of action for fraudulent misrepresentation and the claim is properly stricken under section 425.16.

## DISPOSITION

The trial court's denial of Pancho Villa's special motion to strike F&R's cause of action for negligence is affirmed.  The court's denial of Pancho Villa's motion to strike F&R's cause of action for fraudulent misrepresentation is reversed and the trial court is directed to enter a new order striking that cause of action from the ACC.

AARON, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

26